REEVES    v.   JOHN.

(*Knoxville.*    October  15,  1895.)

1. FRAUDULENT CONVEYANCE.  *Deed of trust not fraudulent in law.*

The provisions in a deed of trust of a stock of goods for a public
sale by the trustee upon failure to pay the debt secured within
six months, and for the inclusion of any goods that the grantor
shall thereafter purchase and add to the stock, do not imply a
reservation to the grantor of the right of possession and sale
in the meantime, so as to render the deed fraudulent in law,
where there is no provision that the trustee shall defer to enter
and take possession until after default, and his power to make
private sales before that time is not negatived.  (*Post, pp. 435–
441.*)

Cases cited and approved: Bank *v.* Ewing, 12 Lea, 598; Mancy *v.*
Kellough, 7 Yer., 440; Henshaw *v.* Wells, 9 Hum., 568; Vance
*v.* Johnson, 10 Hum., 214.

Cited and distinguished: Bank *v.* Ebbert, 9 Heis., 153; Bank *v.*
Haselton, 15 Lea, 216; Phelps *v.* Murray, 2 Tenn. Ch., 746.

2. SAME.  *Deed of trust not fraudulent in fact.*

Fraudulency in fact of a deed of trust of a stock of goods made to
secure and prefer certain creditors is not established by proof
that the grantor was embarrassed by debt; that other credit-
ors were urging their claims and watching his movements;
that the deed was made hurriedly in the night, and registered
at an unusual hour, and that the grantor's wife and clerk,
without his knowledge or that of the trustee or beneficiaries,
took some of the goods out of the store after the deed was ex-
ecuted.  (*Post, pp. 441, 442.*)

3. SAME.  *Fraudulent transfer of choses in action.*

A secret transfer of choses in action as additional security for a
debt due to a creditor already secured by a deed of trust, is
fraudulent as against other creditors, where there was no well-
defined agreement as to terms on which the choses were to be

Reeves *v.* John.

held, except that the proceeds were to relieve the debts provided for in the deed of trust to the extent realized thereon. (*Post, pp. 442, 443.*)

FROM M'MINN.

Appeal from the Chancery Court of McMinn County. T. M. McConnell, Ch.

Burkett &. Mansfield and W. D. Henderson for Complainants.

Sam Epps Young, D. C. Young, and T. E. H. McCroskey for Defendants.

Wilkes, J. These bills were filed to set aside as fraudulent a certain deed of trust upon a stock of goods and other personal property, made by defendant, A. K. John, to defendant, J. C. Cate, and the latter bill of Martin Bros. *et als.*, seeks, in addition, to set aside a transfer of certain choses in action made by defendant, John, to defendant, Whitman, for the mill company.

The Chancellor granted the relief prayed for, and gave the attaching creditors judgments for their debts, set aside the deed of trust and the transfer of the choses in action, and directed the proceeds applied in the order of priority between complainants gained by their attachments. Defendant, John, and the beneficiaries in the trust-deed and under the transfer of

the choses in action, appealed and have assigned errors.

The questions presented in the case are, whether the deed of trust is fraudulent in law or fact, and whether the transfer of the choses in action is fraudulent in fact.

The deed of trust executed by John to Cate con-veys to him a stock of merchandise in a storehouse at Mouse Creek, Tenn.; also, a claybank horse, and an organ. The portions necessary to be quoted in order to determine whether it is fraudulent in law, are as follows: After describing the property, it says: "To have and to hold, to said John C. Cate, his heirs and assigns, forever; and if I shall pur-chase other goods for said stock, this deed of trust is to include them also." It then specifies the debts intended to be secured, and proceeds: "Now, this deed is made in trust, and, if I should pay the said debts within the next six months from this date, then this deed of conveyance shall be null and void; but, if I should not pay, or cause the same to be paid, within said time, then the said John C. Cate, as trustee, after giving ten days' notice by publication in some newspaper published in McMinn County, Tenn., at my expense, shall expose said property to the highest bidder, for cash, appropriate the proceeds to expenses and costs, then the debts herein provided for, then the balance to me, if any."

It is contended that the power to sell the goods was impliedly retained by the mortgagor by the

terms of this conveyance, and, in the absence of any power expressly authorizing the trustee to take possession and sell the property, the law will presume that the parties intended that the debtor should remain in possession until the six months expired after its execution, when a public sale was to take place; that it provides for replenishing the stock and virtually carrying on the debtor's business for his benefit, and hence it is void on its face.    The cases of *Phelps, Dodge & Co.* v. *Murray*, 2 Tenn. Ch. Rep., 746; *Tennessee National Bank* v. *Ebbert*, 9 Heis., 153; *Bank of Rome* v. *Haselton & Co.*, 15 Lea, 216, are cited as holding this doctrine and supporting the decree of the Chancellor, as well as a host of cases from other States collected in the brief of counsel.

The case of *Phelps, Dodge & Co.* v. *Murray*, 2 Tenn. Ch., 746, was a conveyance of a stock of goods, and stipulated that it was to cover any other goods which, from time to time during the existence of the mortgage, might be purchased by the grantor and put in said store to replace any part of said stock which may have been disposed of, or to increase or enlarge the stock now on hand.    The debts secured had several months to run, and the deed provided that the trust should be void if the notes were paid as they fell due, otherwise the trustee might enter and sell.    There were covenants by the grantors to keep up the stock to its condition at date of conveyance and apply profits arising from the sale of the stock to the notes as they fell due.

The Chancellor held that the mortgage fairly implied that the mortgagor was to remain in possession of the goods and sell them in the ordinary course of business and undertook to include goods to be thereafter acquired and brought into stock, and he was of opinion the deed was fraudulent and void *per se.*

In *Tennessee National Bank* v. *Ebbert*, 9 Heis., 153, there was a deed of trust upon a stock of liquors, and the grantors expressly reserved to themselves the possession of the property for a stated period, with the right to sell the goods and replenish stock, and it was held that the deed was void upon its face.

In *Bank of Rome* v. *Haselton*, 15 Lea, 216, Haselton & Co. made a deed of trust to Montague for the benefit of the bank. It provided for a note having thirty days to run to maturity and that, if it was not then paid, the trustee, Montague, was authorized to take possession of the property and sell, etc. The grantees remained in possession of the goods after as before the deed of trust, and sold some $800 worth, chiefly to their own employes, without either the protest or express assent of the trustee, Montague. The Court was of opinion that for thirty days the debtors were to keep possession of the goods, and, since there was nothing to forbid, they might sell or use them, which they did with the knowledge and without protest from the trustee or creditors, and the deed was held void.

Conceding the correctness of these cases, it is

evident that in all of them the Court was of opinion that the debtor was either expressly or impliedly authorized to remain in possession of the property conveyed and sell and use it as before the conveyance, and it was upon this ground that the deeds were held void.

In the case of *Lincoln Savings Bank* v. *Ewing*, 12 Lea, 598, there was a conveyance of a tract of land, a number of horses, mules, cattle, and hogs, and 150 barrels of corn raised on the land that year. The debt secured had two years to run to maturity. The possession and use of the property were not reserved in express terms to the grantor in the deed of trust. It contained this clause, however: "If, at any time before the debt matures, it should be thought best, from any cause, to sell any of said property, said bank, through it agent, officers, or attorneys, is authorized and empowered to do so, first getting my consent." The Court said: "In this State it has been invariably held that the legal title to the property conveyed vests in the mortgagee, and he is entitled to the immediate possession, unless the mortgage otherwise provides," citing *Maney* v. *Kellough*, 7 Yer., 440; *Henshaw* v. *Wells*, 9 Hum., 568; *Vance* v. *Johnson*, 10 Hum., 214.

In the instrument now under consideration there is no provision, expressed or implied, that the grantor is to remain in possession, but the fair inference or implication from the entire instrument is otherwise. There is a provision that, in case of default in pay-

ment of the note, the trustee might sell at public sale, but the deed does not provide that he shall enter and take possession for that purpose, as in the case of *Phelps, Dodge & Co.* v. *Murray*, 2 Tenn. Ch., 746, and in *Bank of Rome* v. *Haselton*, 15 Lea, 216, but evidently proceeds upon the idea that the trustee, Cate, would have already entered and be in possession at that time. Neither is the .provision about adding other goods to the stock the same as in the cases cited. It is difficult to see, if the trustee is in possession, why an addition to the stock by the grantor should make the deed fraudulent, whatever might be held as to the property thus added. There is no obligation on the trustee to replenish, and it is optional with the grantor whether he will do so. But the idea is nowhere expressed that there is to be a selling and buying, in the sense of carrying on the business, as before. It is true there is no express provision that the trustees may make private sales before the day of default, but even if that were not implied, it would not render the trust deed void unless the delay stipulated for was unreasonable. But we think the power of private sale by the trustee is fairly implied from the whole instrument until such date as a public sale becomes imperative.

There is a broad distinction between the two classes of cases mentioned, in that in the cases relied on by counsel there is either an express reservation of possession and right to sell in the grantor or such pos-

session and right of sale is plainly inferable from
the terms of the deed, while in the case of *Bank*
v. *Ewing*, 12 Lea, 298, and the cases cited in ac-
cord with it, there is no such reservation expressly
made nor fairly inferable from the terms of the
deed. The present case falls under the latter class,
and the right to possession under the law passed at
once to the trustee, with power to sell.

As to the question of fraud in fact in making
the deed of trust, it appears that the debtor was
being pressed. He desired to prefer certain credit-
ors. Other creditors were urging their claims and
watching his movements. He made the deed of trust
hurriedly and in the night, and had it registered at
an unusual hour, but none of these things make the
deed of trust fraudulent without more. The debts
provided for are shown to be just and correct, and
the debtor, not attempting to make a general assign-
ment of all his property under the Act of 1881,
had the right to prefer one creditor over another.
It is said that his wife and clerk took some goods
out of the store after the trust was executed. If
this be so, it was a fraud on the trustee, and he
had a right to secure the goods, but we do not
find that the debtor was in any way connected with
or cognizant of the facts, nor were the beneficiaries
under the trust. Nor can fraud be predicated on
the fact that there was a secret intention to keep
the debtor in possession, for, while there is some
conflict of testimony, we think the weight of the

Reeves v. John.

evidence is that the trustee was to have immediate possession. It is true he states that one of the grantor's attorneys, on the next day, told him that he was not expected to have anything to do with the goods until the time of default, but he accepted one of the keys of the storehouse, and went upon the premises and deposited in the cash drawer the $1 consideration specified in the deed of trust, and evidently only temporarily forbore to take actual and exclusive possession until he could see the deed of trust and obtain legal advice. Before he could do this, and the next day after the deed was made, the goods were attached. The grantor and his attorneys state that the trustee was to have the immediate possession, and the weight of parol testimony is to that effect.

Without further reviewing the testimony, we are of opinion that the evidence in the cause does not show the deed of trust to be fraudulent in fact, and we are also of opinion it is not fraudulent in law. We are, however, content with the holding of the Chancellor that the transfer of the choses in action to Whitman for the Sweetwater Mill Company was fraudulent as to the choses in action handed over to the company after the deed of trust had already been drawn for its benefit. The transfer was secretly made. The security was, to say the least, additional to that in the deed of trust, and its purpose was to place the company in a preferred position by means of this secret transfer of

choses in action without any well-defined agreement as to the terms on which they were to be held except that the proceeds were to relieve the debts provided for in the deed of trust to the extent realized upon, and thus benefit the debtor. We think this transfer stands upon a different basis from the deed of trust, that it was a separate, independent transaction, done after the deed of trust had been made and is entirely independent of the deed of trust.

The Chancellor's decree as to the deed of trust will be reversed, and the proceeds of the property in the hands of the receiver will be applied to the debts specified in the deed of trust, but the amount realized from the choses in action transferred after the deed of trust was made will go as directed by the Chancellor. The complainants will pay the costs of this Court and the Court below, except the receiver's cost and compensation and expenses, which will be paid out of the funds in his hands. The judgments in complainants' favor against John will not be disturbed. The cause is remanded to execute this decree by proper orders.