A. A. SCHOOLFIELD V. ELIZABETH COGDELL *et al.*

(*Jackson*.   April Term, 1908.)

1. **MORTGAGES.** Foreclosure at suit of judgment creditor of mortgageor, with nulla bona return, after maturity of mortgage.

   The rule is well settled in this State that a judgment creditor upon a return of *nulla bona* has the right by a bill in chancery to have a matured mortgage of another upon the judgment debtor's land foreclosed without the mortgagee's consent, and to have the proceeds applied first to the payment of the mortgage debt, and the surplus to his judgment. (*Post, p.* 631.)

   Cases cited and approved: Fulghum v. Cotton, 6 Lea, 590; Craigmiles v. Hays, 7 Lea, 724; Schultz v. Blackford, 9 Lea, 434; Wessel v. Brown, 10 Lea, 705; Bridges v. Cooper, 98 Tenn., 394; McClurg v. McSpadden, 101 Tenn., 436.

2. **SAME.** Same. Leave to file amended and supplemental bill to make other lien claimants parties is properly refused after too great delay, when.

   In a suit to foreclose a mortgage of another, and to subject the surplus proceeds to complainants judgment, an application for leave to file an amended and supplemental bill to make other lien claimants parties, contesting some of the claims and seeking to have their amounts and priorities determined, made more than two years after the original bill was filed, more than four months after remandment by the supreme court, after an order of reference and the master's report of the liens existing when the original bill was filed, and after a decree of sale was made, was properly refused, because of the great delay in presenting it, and because such bill was calculated to stir up fresh litigation as to the contested claims resulting in delay and embarrassment in the collection of their debts by prior mortgages. (*Post, pp.* 630-634.)

   Cases cited and approved: Cloud v. Hamilton, 3 Yerg., 81; Fulghum v. Cotton, 6 Lea, 590.

Schoolfield v. Cogdell.

3. **SAME.** No deduction from mortgagee's debt for prior mortgages assumed by him, when.

Where, in a suit to foreclose a mortgage of another, and to subject the surplus proceeds to complainant's judgment, it appeared that the owner's grantor, the mortgagee, was to pay prior mortgages out of the purchase money which was secured to him by note and deed of trust, and that none of the purchase money note had ever been paid, it was not proper in fixing the priorities, to deduct from the claim of such grantor and mortgagee the amount of such prior mortgages. (*Post, p.* 634.)

4. **SAME.** Judgment creditor of mortgageor with nulla bona return is not entitled to priority in subjecting impounded rents.

Where, in a suit by a judgment creditor, with a *nulla bona* return, to foreclose a mortgage of another and to subject the surplus proceeds to complainant's judgment, the appointment of a receiver and the impoundment of rents at complainant's instance does not give him priority in subjecting the rents to his debt, for the reason that he had no lien on the property. (*Post, pp.* 634-636.)

Case cited and approved:  Moore v. Knight, 6 Lea, 438.

5. **SAME.** Same. Impounded rents apportioned among lien creditors according to priorities, when.

Where, in a suit to foreclose a mortgage of another, and to subject the surplus proceeds to complainant's judgment, the rents impounded are apportionable among the several lien creditors according to their priorities, and a subsequent mortgagee is not entitled to them where his trustee did not take possession of the land, and the deed of trust did not permit the trustee to collect the rents. (*Post, pp.* 637-639.)

Cases cited and approved:  Cowan v. Gill, 11 Lea, 688; Bank v. Ewing, 12 Lea, 598; Reeves v. John, 95 Tenn., 434; Fertilizer Co. v. Thomas, 97 Tenn., 481.

6. **SAME.** Notice to mortgage trustee of prior unregistered mortgage is notice to principal postponing his lien.

Notice to the trustee in a deed of trust to secure a debt that there exists a prior unrecorded mortgage or deed of trust is notice to his principal, and though the deed of trust securing his debt is registered first, the debt secured by the prior unrecorded mortgage is entitled to priority. (*Post, pp.* 639-641.)

Cases cited and approved:  Myers v. Ross, 3 Head, 59; Robinson v. Owens, 103 Tenn., 91.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

CARROLL & MCKELLAR and HUBERT FISHER, for complainant.

R. M. HEATH and HENRY CRAFT, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The original bill herein was filed on the 11th of June, 1905, for the purpose of rescinding a contract for the sale of a half interest in the growing timber on what is known as the "Pearson tract" of land on the ground of fraud.    The bill alleged that W. E. Cogdell had pointed out timber as being on the land bought of Pearson which was not thereon, and that Schoolfield has paid $1,000.   He further alleged that L. L. Pearson had a lien on the land for about $7,000 purchase money which

would be due some time in December, 1905, and that a deed of trust had been given to secure the same. It was stated in the bill that various incumbrances which were enumerated were still outstanding against the property. It was claimed therein that Schoolfield was entitled to a rescission of the contract and to a lien on the land for the return of $1,000 which he had paid to Cogdell. Complainant also asked for a decree foreclosing all the liens upon the aforementioned property, and to have the proceeds of sale applied in discharge of the indebtedness owing by the defendants in order of priority. It was stated in the bill that the *corpus* of the property is not sufficient to pay the entire indebtedness due, and that complainant is entitled to the appointment of a receiver to take charge of and rent out the property *pendente lite,* and to impound the rents and property. The chancellor on the pleadings and proof pronounced a decree in favor of the complainant, Schoolfield, and against the defendants W. E. Cogdell and Elizabeth Cogdell for the sum of $1,060, but held that no lien existed in favor of the complainant for satisfaction of this judgment on the land purchased by L. L. Pearson of the defendants. The bill, as already stated, averred the insolvency of Cogdell and wife, and sought, among other things, a foreclosure of all the liens upon the property known as the "Pearson Tract." A receiver was appointed, who was directed to rent out the Pearson tract and collect the rent. The land was rented out by the receiver for the year 1906,

and rents were collected by him approximating $750 on that year. It is also shown that $400 is in the hands of the receiver arising out of the rents for 1905. It appears that while the Pearson land was in the custody of the court through its receiver, R. M. Heath, trustee in the Pearson mortgage, at the instance of Pearson, sold the land, comprising about 653 acres, and it was purchased by Pearson. Pearson thereafter filed a petition, claiming the rents in the hands of the receiver upon the theory that the rents were collected after his purchase. The chancellor further decreed that the costs of the receivership and other costs were payable out of the rents, and directed that the residue be paid over to said Pearson. As already stated, the chancellor denied the right of the complainant to the lien on the land or any part of it, and also decreed that he was not entitled to any portion of the rents. This decree was pronounced on March 19, 1907, and, from so much of the decree as denied complainant a lien on the land and any portion of the rents impounded by him, complainant appealed to the supreme court, and assigned the following errors:

"(1) In not affirming that he was entitled to a lien upon the land upon granting a rescission of the contract.

"(2) That it was error not to have ordered a reference to ascertain the amount of the outstanding debts secured by the several mortgages described, and, after judicially ascertaining the several amounts, to have de-

creed a sale of the several tracts of land pursuant to the prayer of the bill and in accordance with the practice of the court of chancery to have adjudged the priorities among the lienors; and

"(3)  In not affirming that the rents accruing subsequent to the appointment of the receiver were applicable to the debt of the appellant against Cogdell and so decreeing."

This court at the April term, 1907, entered the following decree on the errors assigned, viz.:

"(1)  That the sale of the lands described in the original bill of *A. A. Schoolfield* v. *Elizabeth Cogdell and Others,* by R. M. Heath as trustee, in a conveyance made to him in said lands for the benefit of L. L. Pearson, is null and void, the said lands being at the time of the sale made without the permission of the court, and the decree of the chancellor approving said sale and refusing said land to be sold in these causes is hereby reversed.

"(2)  That these causes be remanded to the chancery court of Shelby county, and that the amounts of the several incumbrances upon said land existing at the time the bill of A. A. Schoolfield was filed be ascertained by a proper reference or otherwise, that the said lands then be sold under a proper decree to be entered in said court for that purpose, and that out of the proceeds of said sale the said several incumbrances upon said lands be paid in the order of their priority, to be decreed by the chancellor, and, if a surplus re-

main, that the same be applied to the satisfaction of the decree granted in said court in favor of A. A. Schoolfield and against Elizabeth Cogdell and W. E. Cogdell.

"(3) That the decree of the chancellor disposing of the rents of the said lands while in the custody of the court in these causes be reversed, and that he make such proper disposition of the same in payment of the costs of these causes and the liabilities of the defendants, W. E. and Elizabeth Cogdell, as may be meet and proper under the adjudications of this court and the equities and rights of the parties in such cases, except that no part of the rents of 1906 will be applied to the payment of the compensation of the receiver for 1905.

"(4) In all other respects the decrees of the chancellor are affirmed.

"(5) The defendant L. L. Pearson will pay all the costs of this appeal for which execution will issue against him and G. H. Gilham, security on his bond for the prosecution of his appeal."

On June 14, 1907, after the remandment of the cause to the chancery court of Shelby county, a decree of reference was entered by counsel for the complainant, directing the master "to ascertain and report the amounts due upon the several incumbrances upon the said land, all of which are set forth in the pleadings herein, and report the same to the court."

It seems, however, that no steps were taken to exe-

cute this order of reference, and on September 2, 1907, L. L. Pearson applied to the chancery court for permission to sell under his deed of trust. Accordingly a decree was entered September 2, 1907, allowing such a sale to be made, and appointing R. M. Heath special commissioner to make it. The decree, however, recites:

"The clerk and master will execute the reference hereinbefore ordered, but the sale allowed and directed will not be delayed or suspended by the said reference, as each may proceed independently of the other, and all rights will be hereinafter adjusted by proper decrees."

It appears that a sale of the land was made by R. M. Heath, special commissioner, October 15, 1907, to L. L. Pearson, for $1,000, and reported to the court October 29, 1907. On January 7, 1908, the clerk and master filed his report under the order of reference made June 14, 1907, showing the following debts and incumbrances, as well as the order of priorities, viz.:

| | |
|---|---|
| Sarah Rickett ................... | $1,568 00 |
| Goodman Bros. ................... | 2,243 00 |
| L. L. Pearson ................... | 7,105 00 |
| F. C. Demuth ................... | 1,063 65 |
| Mrs. F. P. Haberling ............ | 548 80 |
| A. A. Schoolfield ............... | 1,110 00 |

The clerk and master also mentioned a trust deed to R. M. Heath and Geo. H. Gilham, trustees, to secure L. L. Pearson the sum of $700, saying it was dated and

Schoolfield v. Cogdell.

recorded after the Schoolfield bill was filed, and for that reason was not included in the incumbrances reported. The clerk and master also reported that L. L. Pearson was liable for the Sarah Rickett and Goodman Bros. debt. The case coming on to be heard, the chancellor in memorandum opinion held:

"(1) That Mabel Haines (meaning Mabel Haines Francis) could file her petition, and have it reported on instanter.

"(2) The deed of trust securing F. C. Demuth was held inferior to the deed of trust securing L. L. Pearson.

"(3) The Rickett and Goodman Bros. deeds of trust were held to be superior to L. L. Pearson's deeds of trust.

"(4) The rents in the hands of the receiver, less compensation of the receiver, will be applied on claims. according to priority like proceeds of land. Pearson will account in same way for rent of 1907.

"(5) The report of the clerk and master, except as indicated in memorandum opinion, was to be confirmed.

"(6) The sale made by R. M. Heath, special commissioner, will be set aside and a sale ordered free from debts—that is, to satisfy all claims according to priority —R. M. Heath to be again appointed special commissioner to make the sale.

"(7) There is no necessity for the amended and supplemental bill of Schoolfield, and the application to file same is denied."

A decree was accordingly entered March 30, 1908, setting aside the sale by R. M. Heath, commissioner, made October 15, 1907, "as the reference had not been executed at the time such sale was made." The decree reappointed R. M. Heath special commissioner, and directed him to again sell the land for cash. The decree of the chancellor fixed the order of priority of the respective incumbrances as fixed by the clerk and master, which have already been stated. This decree further stated that W. E. Cogdell claimed that the deed secured by the A. B. Pittman deed of trust had been paid, but that Mabel Haines Francis claimed such deed was still due her, and that neither Mabel Haines Francis nor A. B. Pittman, trustee, were parties to the suit, and that said Mabel Haines Francis had withdrawn her application to file a petition. It is further stated in this decree that the Walter A. Woods Mowing & Reaping Company in their bill claimed a right to subject the land to two judgments of $471.44 and $240.89, respectively, but that such company was not a party to the suit herein. The decree further held that none of the beneficiaries or trustees in the Sarah Rickett trust deed, Goodman Bros. trust deed, or A. B. Pittman trust deed were parties to this litigation. It was further held that A. A. Schoolfield's application to file an amended and supplemental bill, "if ever proper, was made too late. The same was not contemplated by the supreme court of Tennessee, and the results aimed at have been accomplished by the reference herein." The decree fur-

ther held that the trust deed securing F. C. Demuth was held to be secondary to the deed of trust securing $7,105 to L. L. Pearson. The decree directed the special commissioner in selling the land to announce at the sale the order of priority of the six specified claims aggregating $13,638.45. It was further decreed that, if L. L. Pearson became a purchaser at such sale, he was not to be required to pay any cash unless his bid was greater than the amount of his claim, $7,105, except such cash necessary to pay proper costs of sale. The $7,105 could be used in discharging purchase money; Pearson assuming payment of the Sarah Rickett debt of $1,568 and the Goodman Bros. debt of $2,243. It was further decreed that, while the Cogdells owed L. L. Pearson $810 and $700 in addition to the $7,105, Pearson could not use such debt as a part of the purchase money of the land if bought by him.

It was further decreed that any purchaser of the land would have to take same subject to the rights of Mabel Haines Francis claiming under the A. B. Pittman trust and to the rights of the W. A. Wood Mowing & Reaping Company, if such parties had any rights. The decree held that such parties were not parties hereto, and that their claims which were contested could not be determined herein. The decree further held that the rents of 1906 in the hands of the receiver and the rents of 1907 collected by L. L. Pearson "will be treated as a fund to pay debts of W. E. Cogdell and Elizabeth Cogdell, and will be applied to payment of such debts provided for

in this decree. Such rents, however, will not be used in discharging the Sarah Rickett debt and Goodman Bros. debt, as such debts will have to be assumed by any purchaser of the lands. Such rents will be used in discharging anything that may remain due on L. L. Pearson's $7,105, and after sale made as ordered, and any surplus may be used in paying successively and according to priority F. E. Demuth, Mrs. F. B. Haberling, and A. A. Schoolfield. The proper compensation of the receiver will be first deducted out of the rents in his hands."

L. L. Pearson excepted to all the parts of the decree setting aside the sale made to him made October 15, 1907, and decreeing that the rents of 1906 and 1907 should be used in paying debts as decreed. He claimed that the sale of October 15, 1907, should be confirmed, and the rents of 1906 and 1907 be adjudged to belong to him to be applied on the debts of $810 and $700 and $80 due him from the Cogdells. The said L. L. Pearson then prayed an appeal from such parts of said decree and from that part of the decree charging him with costs to the next term of the supreme court, which was granted.

A. A. Schoolfield also appealed from the foregoing decree, as well as from the order denying him the right to file an amended and supplemental bill, and that part of the decree applying to the rents and profits, and adjudging costs against him. F. C. Demuth has also sued out a writ of error. The assignments of error filed on behalf of A. A. Schoolfield are as follows:

"(1) The chancellor erred in declining to permit the amended and supplemental bill to be filed by the plaintiff in order to bring before the court the parties owning the mortgage debts secured by the incumbrances upon the property anterior to the Pearson title.

"(2) The chancellor erred in decreeing a sale of the property under the Pearson mortgage.

"(3) The chancellor erred in not charging the defendant Leland L. Pearson with

"First. The rents which he received while a mortgagee in possession under a void sale.

"Second. With the prior incumbrances to the amount of the indebtedness (a) to Sarah Rickett; (b) to Goodman Bros.; (c) the indebtedness due to the Walter A. Wood Mowing & Reaping Company.

"(4) The chancellor erred in not applying the rents in the hands of the receiver to the indebtedness due to the complainant.

"(5) The chancellor erred in taxing the plaintiff with any costs conditional or otherwise."

The first assignment of error is based upon the refusal of the chancellor to permit complainant to file an amended and supplemental bill to bring into the record the incumbrances upon the property that were prior to the title of the defendant Leland L. Pearson, who had conveyed the property to Elizabeth Cogdell under a warranty deed. It is said that the filing of an amended and supplemental bill was absolutely necessary in order to ascertain the surplus in the property

and subject it to the payment of complainant's debt. It is said that, although prior lienors might object to the foreclosure of their liens before they were matured, yet it nevertheless was a proper proceeding to bring them before the court—citing *Cloud* v. *Hamilton,* 3 Yerg., 81.

The rule is well settled in this State that a judgment creditor upon a return of *nulla bona* has the right by a bill in chancery to have a mortgage upon the land of the judgment debtor which has matured foreclosed, and, without the consent of the mortgagee, to have the land sold, and the proceeds applied, first, to the payment of the mortgage debt, and the surplus to his judgment. *Fulghum* v. *M. C. Cotton,* 6 Lea, 590; *Craigmiles* v. *Hays,* 7 Lea, 724; *Schultz* v. *Blackford,* 9 Lea, 434; *Wessel* v. *Brown,* 10 Lea, 705; *Bridges* v. *Cooper,* 98 Tenn., 394, 39 S. W., 723; *McClurg* v. *McSpadden,* 101 Tenn., 436, 47 S. W., 698.

While the complainant had no lien on the land involved in this controversy, nevertheless, as a judgment creditor he was entitled under the well-settled practice to bring before the court all lienors holding incumbrances prior to the Pearson mortgage, and as to all such matured mortgages to have a foreclosure and sale of the property with a view of reaching any surplus arising therefrom after the satisfaction of the mortgage indebtedness according to priorities. This principle was applied on the former hearing of this case in this court, and it was decreed:

"That these causes be remanded to the chancery court of Shelby county and the amounts of the several incumbrances on said lands existing at the time the bill of A. A. Schoolfield was filed be ascertained by proper reference or otherwise."

The original bill herein was filed June 15, 1905, and stated a number of mortgages outstanding on this property and made the trustees parties defendant and in some instances brought the mortgagees before the court. After the remandment of the cause by this court on May 28, 1907, the complainant on the 15th of October, 1907, made application to the chancellor to file an amended and supplemental bill bringing before the court, not only the incumbrancers whose mortgages, deeds of trust, and liens were shown in the original bill, but alleging the existence of other mortgages and liens at the date of the filing of the original bill and seeking to make such lienors parties defendant. In some instances the liens of those incumbrancers were claimed to have been paid and settled, and as to them the amended and supplemental bill would have precipitated fresh litigation. As already seen, this amended bill was not sought to be filed until more than two years had elapsed since the filing of the original bill, nor was it presented in the chancery court until more than four months after the remandment by this court, and not until the chancellor had ordered a reference and a report had been made of the incumbrances on the land in controversy in existence at the date of the filing of the

original bill.   Indeed, the application to file the amended and supplemental bill was not made until the chancellor had pronounced a decree on the 15th of October, 1907, directing R. M. Heath as special commissioner to sell the land under the first mortgage.   We are therefore of the opinion that the chancellor properly refused the application of complainant to file an amended and supplemental bill, because, first, of the great delay in presenting it; secondly, it was calculated to stir up fresh litigation as to contested claims of F. C. Demuth, the Wood Mowing & Reaping Company, and Mabel Haines Francis, and thus delay and embarrass prior mortgagees in the collection of their debts.   In *Fulghum* v. *Cotton,* supra, it was said:

"While we are of opinion that the mortgagee can have no just ground of complaint at a decree of sale after the maturity of the mortgage and in accordance with its terms, yet whether he shall be delayed and prevented from selling is a wholly different question.   It would be manifestly unjust where a mortgagee is secured by a prior mortgage, as to which no dispute exists between him and the mortgagor, that the former shall be delayed in his remedy by litigation between the mortgagor and other creditors as to which he has no interest.   We should say that in general the mortgagee ought not to be thus delayed and embarrassed, but should be allowed to proceed at once to sale, either under the power of his mortgage or by decree, leaving the other parties to litigate over the proceeds.   .   .   .   We think a mortgagee

would have a much stronger ground to complain at being thus delayed and embarrassed than in being forced to a sale," etc.

The third assignment of error is based upon the action of the chancellor in fixing the amount of the Pearson mortgage, and in disposing of the rents that Pearson had received. The chancellor fixed the Pearson incumbrance at the sum of $7,105, with interest from the first day of January. It is insisted on behalf of the appellant complainant that the Sarah Rickett mortgage due January 1, 1906, amounting to the sum of $1,568, and the Goodman Bros. mortgage, amounting to $2,243, together aggregating the sum of $3,811, should be deducted from the Pearson debt, for the reason that Pearson undertook and agreed to pay off these incumbrances. This subtraction would reduce the amount of Pearson's indebtedness to $3,294. It appears from the bill that complainants admit that the sum of $7,105 was due Pearson on his mortgage. If Pearson assumed the payment of the Sarah Rickett and Goodman Bros. indebtedness, it is also shown that the Cogdells were to pay Pearson the sum of $7,105, the purchase money of said land, and out of that purchase money Pearson was to pay the Sarah Rickett and Goodman Bros. indebtedness. The Cogdell note to Pearson for purchase money has never been paid.

The fourth assignment of error is that the chancellor erred in not applying the rents in the hands of the receiver to the indebtedness due the plaintiff. When

Schoolfield v. Cogdell.

this cause was heard at the last term, the decree of the chancellor in the disposition of the rents was reversed, and it was ordered that he make such proper disposition of the same in payment of the costs of these causes and the liabilities of the defendants W. E. and Elizabeth Cogdell as may be meet and proper, except that no part of the rents of 1908 will be applied to the payment of the compensation of the receiver for 1905. On the last hearing, after the remandment of the cause, the chancellor decreed:

"That the rents for the year 1906 in the hands of the receiver and the rent of the same lands for 1907 collected by L. L. Pearson will be treated as a fund to pay the debts of W. E. Cogdell and Elizabeth Cogdell, and will be applied to payment of such debts provided for in such decree. Such rents will not be used, however, in discharging the Sarah Rickett $1,568 and Goodman Bros. $2,243 debts, as such debts will have to be assumed by any purchaser of the lands. Such rents will be used in discharging anything that may remain due on L. L. Pearson's $7,105 debt after sale made as ordered, and any surplus be used in paying successively according to priority F. C. Demuth, Mrs. E. P. Haberling, and A. A. Schoolfield."

It is contended that the chancellor erred in not applying the rents in the hands of the receiver to the indebtedness due the complainant, Schoolfield. The basis of this contention is that the receiver was appointed and the rents impounded at the instance of

the appellant Schoolfield, and that, therefore, he is entitled to priority in subjecting them to the satisfaction of his debt. We do not concur in this contention. The complainant had no lien on the property involved, and was therefore not entitled to assert a prior lien on the rents of the property. An examination of our cases will show that no bill has been maintained to impound rents and subject them to the satisfaction of the indebtedness of a single contract creditor or judgment creditor with no lien on the specific property.

This principle is illustrated in the case of *Moore* v. *Knight*, 6 Lea, 438, which was a case involving the vendor's lien, and where rents were sought to be subjected to the satisfaction of unpaid purchase money. Said the court:

"The true ground on which to rest the rights of the vendor are that he has primarily the security of the land for the payment of his debt. If this is not sufficient, after failure of payment by the vendee, and it is shown, either by allegation in the original bill or during the litigation to enforce the lien by petition or application to the court, verified by affidavit, that probably the primary security is insufficient, then when he has retained the legal title he may have a receiver appointed and appropriate the rents to the payment of his debt as an incidental part of his security."

We therefore hold that appellant Schoolfield is not entitled to priority in satisfaction of his claim out of the rents.

It is insisted on the appeal of Pearson that he is entitled to have these rents applied, not to the debt of $7,105, secured by the Cogdell deed of trust, but that they should be applied to the satisfaction of later deeds of trust executed by the Cogdells to secure the $810, $700, and $80 debts due to Pearson from Cogdell. In *Cowan, McClung & Co.* v. *Gill*, 11 Lea, 688, the following general rules were recognized as governing the appropriation of rents:

"That 'a trustee holding the legal title to land under a deed of trust to secure creditors, *but not in possession*, is not entitled to the rents, nor can the same be attached by the beneficiary for the payment of his debt.'

"(2)    That 'rents accruing after execution of the mortgage, and before sale, in absence of contract as to same, belong to mortgagor.'

"(3)    That in Tennessee the mortgage is always treated as a mere security for the debt, and, when the mortgagee is out of possession, it is the *corpus* of the property, not *its rents and profits,* which constitute the fund for the satisfaction of the debt.

"(4)    That 'a mortgagee has no specific lien upon the rents and profits of the mortgage land, unless he has in the mortgage stipulated for a specific pledge of them as part of his security."

"(5)    Nor 'the general rule that the mortgagee, as against the mortgagor in possession, or those deriving title under him subsequent to mortgage, is not entitled to a receiver of rents *pendente lite.*' "

In *Lincoln Savings Bank* v. *Ewing*, 12 Lea, 598, the court said:

"In this State it has been invariably held that the legal title to the property conveyed vests in the mortgagee, and he is entitled to the immediate possession unless the mortgage otherwise provides."

In *Reed Fertilizer Company* v. *Thomas*, 97 Tenn., 481, 37 S. W., 221, it was said:

"While the instrument does not expressly state who shall have the rents of the real estate during the two years' delay, yet we think a fair construction of the instrument is that these rents should go to the trustee, just as the growing crops are directed to go. In the absence of any provision for possession, it passes, with the execution of the instrument, to the grantee." *Reeves* v. *John*, 95 Tenn., 434, 32 S. W., 312.

"But we think the fair and proper construction of this instrument is that the subsequently accruing rents during the two years' delay passed, like the crops then growing, to the grantee, the grantor remaining in possession as the tenant of the trustee, and responsible to him for the rental proceeds."

Applying these general principles to the facts of this case, it appears that the trustee of Pearson did not take possession of the land involved at the date of the execution of the deed of trust by Cogdell and wife, and that being so, and nothing appearing in the instrument indicating an intention to permit the trustee to collect the rents, it follows that the rents of the property be-

longed to the mortgagor or grantor Cogdell and wife. But since those rents have been impounded by the court they are now held as a fund for the satisfaction of the claims of creditors primarily who have liens on the land. The chancellor apportioned these rents among these several lien creditors according to priorities, and held that complainant Schoolfield should not participate in such rents until the satisfaction of these prior lienors. We think there was no error in this disposition of the rents by the chancellor.

We have considered the other errors assigned by Pearson, and find none of them well taken.

The last matter to be noticed comes up on the writ of error sued out on behalf of F. C. Demuth. It appears that on December 21, 1904, W. E. Cogdell and his wife, Elizabeth Cogdell, executed a deed of trust to G. H. Gilham, trustee, which was filed for registration December 22, 1904, and duly recorded. This deed of trust was executed to secure the payment of a note for the sum of $900 due F. C. Demuth for money borrowed of him by the Cogdells. The Pearson deed of trust executed by W. E. Cogdell and his wife, Elizabeth Cogdell, to R. M. Heath and G. H. Gilham, trustees, to secure a note for $6,000 due L. L. Pearson, was dated December 7, 1904, and was not filed for registration until January 25, 1905. It thus appears that the trust deed in favor of Pearson, though executed at a date prior to the execution of the trust deed made to secure Demuth, was not filed for registration until the Demuth

deed of trust had been recorded for more than a year. The chancellor was of opinion, and so decreed, that the Pearson deed of trust, though recorded subsequently to the registration of the Demuth deed of trust, was entitled to priority, for the reason that George H. Gilham, trustee for Demuth, had notice of the execution of the Pearson deed of trust when he became trustee for F. C. Demuth. In the argument submitted in this court on behalf of the priority of the Demuth mortgage it is denied that Gilham had any knowledge of the existence of the trust deed to secure Pearson prior to the execution of the Demuth deed of trust. We think an examination of the deposition of Gilham will show that he had knowledge of the unrecorded mortgage executed by Cogdell and wife to Pearson before the $900 loan was made by Demuth. Moreover, Gilham testified:

"I am sure at the time I gave Mr. Demuth all the information I had regarding the title."

W. E. Cogdell also testified that F. C. Demuth, before he loaned the $900 debt, was informed of Pearson's unrecorded deed of trust.

It is certain on this record that Geo. H. Gilham, trustee for F. C. Demuth, when he accepted the trusteeship had notice of the existence of the prior unrecorded mortgage of L. L. Pearson. It was held in *Myers* v. *Ross*, 3 Head, 59:

"If . . . the agent or trustee has notice of the prior incumbrance or conveyance, it is notice to the principal."

In that case notice of a prior incumbrance had been communicated to John Netherland and Chas. J. McKinney. Netherland and McKinney were made trustees in a deed of trust securing a bank. The court said:

"They [the trustees] no doubt believed at the time, as did Ross himself, that he could in a short time adjust the debt with Myers; but this cannot impair the legal effect of the notice. It is difficult to perceive how the beneficiary in a deed of trust can claim the advantage of its provisions without being effected with a notice to the trustees of a prior incumbrance."

The authority of this case has been challenged by counsel, and we are earnestly asked to overrule it. This case has been several times cited in subsequent cases, and especially in the case of *Robinson* v. *Owens,* 103 Tenn., 91, 52 S. W., 870.

There is no error in the decree of the chancellor, and it is in all respects affirmed.