# EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. ELLIS et al.

Middle Section. April 25, 1933.

(65 S. W. 2d 250)

Petition for Certiorari denied by Supreme Court, December 9, 1933.

True & Dorsey, of Springfield, for appellant E. L. Crosswy.

Seay, Stockell, Edwards & Keeble, of Nashville, for appellees Equitable Life Assur. Soc. of the United States and J. B. Keeble, Jr., trustee.

CROWNOVER, J.   This suit was brought by the complainant to foreclose a deed of trust and to have a receiver appointed to take charge of the crops growing upon the land.

E. L. Crosswy owned a tract of land of 240.5 acres in Robertson county. He sold it to George S. Ellis and wife, taking their note in payment for same. Ellis and wife borrowed $15,000 from the Central Trust Company, on June 1, 1923, and executed a note for same and a deed of trust to secure same, conveying the 240.5 acres. Ellis paid some of this money to Crosswy and executed a second trust deed on the land to secure the payment of the rest. The second deed of trust was foreclosed on August 26, 1926, and Crosswy purchased the land at the foreclosure sale, subject to the first deed of trust. He did not assume the payment of the note of Ellis and wife to the Central Trust Company.

The Central Trust Company assigned the deed of trust to the Equitable Life Assurance Society of the United States and indorsed and delivered the note to same.

R. W. McLemore was named as trustee in the deed of trust and joined in the transfer of the deed of trust and indebtedness to the Equitable Life Assurance Society. The deed of trust provided for the appointment of a substitute trustee should the original trustee be unable or refuse to act as trustee, and in accordance with the provisions of said deed of trust the complainant appointed J. B. Keeble, Jr., as substitute trustee by a writing duly executed and registered.

No payments were ever made on the $15,000 note, but Crosswy paid the interest for 1927 and 1928; and it matured on June 1, 1928.

On August 21, 1929, complainant filed a bill in the chancery court of Robertson county for foreclosure of the trust deed, for injunction

to prevent the cutting of the tobacco crop growing upon the land and to prevent the cutting of timber, and for the appointment of a receiver to take possession of the land and apply its rents and profits, and especially the tobacco crop, to the payment of any judgment rendered or amount found due upon said note. The bill alleged the land would not sell for an amount sufficient to pay the note, interest. etc. The trustee was not made a party to the bill.

Injunction was granted.

Crosswy filed a demurrer to the original bill, the grounds of same being: (1) No equity. (2) Plain and adequate remedy to foreclose through the trustee by advertisement and sale without resort to court proceedings. (3) Bill shows no reason why court had to be resorted to. (4) That the real object and purpose of the bill was to procure the crops then about ready to be severed. (5) That the trustee named in the trust deed was a necessary and proper party to the suit, and was not made such. (6) That no grounds for injunction were laid, and that it was improvidently granted. (7) That no ground for the granting of the injunction to prevent the cutting of the tobacco was shown in the bill. (8) That the court will take judicial knowledge of the fact that the tobacco in the natural order of things ought to be cut. And (9) that the bill does not show that Crosswy has done anything with regard to said tobacco or that he was about to do anything thereto that should not be done. He answered and denied that he had assumed the debt of the Equitable; and denied that he had cut any timber to sell, but showed that he had cut some logs to be sawed into lumber to build a shed to one of the barns on the place to store the tobacco. He alleged that he had greatly enhanced the value of the farm by making improvements thereon to the extent of from $1,000 to $1,500. He alleged that there was no necessity to file the bill to foreclose, as the trustee in the deed of trust had the right to foreclose by advertisement and sale: that the bill was filed for the purpose of appropriating his tobacco crop in payment of the mortgage. He admitted that he would cut the tobacco; that it ought to be cut. He pleaded estoppel against the complainant, for it stood by and saw him improve the place and plant and produce the crops and made no objection; therefore it ought not to have an injunction or receiver.

On August 31, 1929, the chancellor modified the injunction so as to permit Crosswy to cut the remainder of the tobacco and sufficient timber in addition to that already cut to shed the barn. At this hearing the substitute trustee in the deed of trust was made a party complainant on motion of complainant. The chancellor refused to appoint a receiver.

On September 9, 1929, the complainants filed a petition for the appointment of a receiver, in which they alleged, in addition to the

allegations of their original bill, that the defendants Ellis and, Crosswy were insolvent. On the same date they filed a petition for an injunction to prevent Crosswy from disposing of his interest in the tobacco, which was granted.

Crosswy filed demurrers and answers to the two petitions. The demurrers raised the following questions: (1) Want of equity. (2) The petition shows the tobacco has or will be cut, and complainants are not entitled to have such tobacco as was cut placed in the hands of a receiver, and do not so allege. (3) That it does not affirmatively appear that at the time of the filing of the petition the tobacco was yet attached to the land. (4) That the petition in effect admits they are not entitled to a receiver to take charge of tobacco severed from the land. (5) No sufficient allegation for appointment of a receiver. (6) That complainants have no lien on the tobacco and did not acquire such by filing the bill, or otherwise, and do not claim any such lien. (7) Because the petition shows that it is the debt of Ellis and wife, while the petition admits that the tobacco is the property of Crosswy, and they do not show they are entitled to appropriate the same to the payment of the debt. (8) That the allegation that complainants do not believe that the land will bring a sufficient amount to pay the debt is insufficient. (9) That the allegation that the complainants ''are informed on good authority'' that defendant Crosswy, Geo. S. Ellis, and wife are insolvent is not a sufficient allegation. (10) That Crosswy is not a party to the trust deed, and that the provision in the same for the appointment of a receiver did not confer upon the court any further power than it had by law, and that no other ground sufficient was stated. (11) That, if the provision in the trust deed authorizing the appointment of a receiver did enlarge the power of the court, it is against public policy. (12) That, if such provision did enlarge the power of the court, it deprived defendant of property without due process of law and violated the Federal Constitution. (13) That such a provision, if it enlarge the court's powers. violated the Constitution of Tennessee. (14) Because it is not alleged that Crosswy will or has fraudulently disposed of his interest in said tobacco. The answers, filed at the same time, raised the same questions as the demurrer, and set up that at the time the original bill was filed about a fourth of the tobacco had been cut, and that when the petition was filed that two-thirds had been cut. He denied complainants' right to any of the relief asked in the petitions or to any judgment against him for or on any account.

On the hearing, on September 12, 1929, the chancellor appointed a receiver to take charge of Crosswy's two-fifths interest in all the corn and tobacco, ordering that cut prior to the filing of the original bill and that cut between the date of the filing of the bill and the appointment of said receiver to be kept separate, so that the court

might make such orders with reference to the same as might be proper.

Pro confessos were taken against Ellis and wife.

By agreement the receiver was permitted to take charge of the land and rent it for the year 1930.

On January 20, 1930, the court rendered decree against Ellis and wife for $18,121.62, the amount of the principal, interest, and attorneys' fees, and ordered the sale of the land. It was sold on September 6, 1930, for $15,114.65, to the Equitable Life Assurance Society of the United States, which left a balance of $3,006.97 unpaid on the mortgage.

It was stipulated by and between the parties that G. S. Ellis and wife were insolvent; that Crosswy had a contract with W. G. King for King to raise a crop of tobacco in 1929, Crosswy to receive two-fifths of the crop and King three-fifths; that King had subtenants who raised crops of tobacco and other crops on the land.

The cause was heard on depositions and the record. The chancellor found and decreed that complainants had the right under the trust deed to advertise and sell said lands or resort to court for the purpose of foreclosing said deed of trust; that under the provisions of said deed of trust and the fact that the defendants Ellis were insolvent, and that the land would not and did not bring a sufficient amount to pay the debt secured by the said deed of trust, complainant was entitled to a receiver to take charge of the crops and the petition was properly sustained; that Crosswy was entitled, under the contract with defendant W. G. King, his tenant, to two-fifths of the crops grown on said lands during 1929; that a receiver was appointed by the court at noon, September 12, 1929, to take charge of all of the defendant Crosswy's two-fifths interest, both cut and uncut from the land; that the receiver had in his hands two-fifths of the 1929 crop, $1,282.27, and one-third of the 1930 crops, $1,427.88. He found that the amounts of the 1929 crops, cut and uncut, at the time of the appointment of the receiver, were as follows: Cut, $533.33; uncut, $749.03. He further found that G. S. Ellis and wife were insolvent; that the amount of the judgment against Ellis and wife was $18,121.62 and the land was sold for $15,114.65, leaving a deficiency of $3,006.97; that the complainant Equitable Life Assurance Society was entitled to the proceeds, less the proper expense incurred by the receiver, of two-fifths of all the 1929 crops uncut at noon, September 12, 1929, and of one-third of the 1930 crops; that Crosswy was entitled to the proceeds, less receiver's proper expenses, of two-fifths of the 1929 crops which were cut and severed from the land at noon, September 12, 1929; that the receiver should be allowed a commission of five per cent. on the gross proceeds of all crops sold by him, and that such commission, together with the other ex-

penses incurred by the receiver, amounting to $408.07, should be borne pro rata by complainant and the defendant Crosswy. He decreed that the remainder of the judgment of the Equitable against the defendants Ellis, which is for $3,006.97, be credited with $1,-868.41, leaving a balance of $1,138.56.

The costs of the entire cause were adjudged against both the defendant Crosswy and the complainant Equitable Life Assurance Society, one-half each.

The complainant did not appeal.

Defendant Crosswy excepted to said decree and appealed to this court and has assigned errors, which are, in substance, as follows:

(1) The court erred in appointing a receiver in this cause because there are no sufficient facts alleged in complainant's pleadings or proved in the record to authorize the appointment of a receiver.

(2) The court erred in appointing a receiver in this cause under the provision in the deed of trust that upon application to the court a receiver might be appointed to take charge of the crops, because said provision did not enlarge the powers of the court to appoint a receiver or the mortgagee's rights as to such appointment; and, further, because said provision was not binding on Crosswy.

(3) The court erred in granting injunctions and in overruling defendant Crosswy's demurrers.

(4) The court erred in adjudging court costs and attorneys' fees against the defendants George S. Ellis and wife.

1. Under the first assignment of error it is the contention of appellant that the allegations of the original bill and petition for receiver were not sufficient to entitle complainant to a receiver to take charge of, gather, and sell the growing crops.

The original bill states the facts in regard to the deed of trust and note; that the same is delinquent; that defendants Crosswy and Ellis have refused to pay the same; that the deed of trust contains the following stipulation for the appointment of a receiver with power to take charge of the crops:

"And, it is further agreed that when foreclosure proceedings are commenced, or at any time thereafter during the pendency thereof, upon application therefor, the court in which such proceedings are pending, either in term time or in vacation, is authorized to appoint a receiver to take charge of said premises and all crops thereon, or to collect the rents therefrom, and to do and perform such other acts as may be required by order of the court making the appointment, the amount so collected by such receiver to be applied, under the direction of the court, to the payment of any judgment rendered or amount found due upon the foreclosure of this deed of trust."

The bill further alleges that a tobacco crop is growing on the land,

in which Crosswy owns a two-fifths interest, which tobacco will be ready to cut in a few days. The bill then alleges:

"The complainant is informed, and on information and belief charges, that the property conveyed by said deed of trust is not worth, and on a sale thereof will not bring a sufficient amount to pay complainant's debt, interest, attorneys' fees and costs, and it is necessary to subject the defendant Crosswy's interest in the crops now growing on said land to the payment of the amount due on said land."

The petition for the appointment of a receiver states:

"Your petitioners state that they are informed on good authority that the defendants, George S. Ellis, Rose Ellis and E. L. Crosswy are wholly insolvent and that nothing could be made out of them by legal process."

We think the foregoing pleadings set forth sufficiently the facts showing the necessity for a receiver to take charge of the property. Gibson's Suits in Chancery, sec. 905; 53 C. J., 54, sec. 44; Tardy's Smith on Receivers (2 Ed.), 561, sec. 242; Williams v. Noland, 2 Tenn. Ch., 154; Johnson v. Tucker, 2 Tenn. Ch., 401.

It was developed that Crosswy had not assumed the debt; that Ellis and wife were insolvent; and that the land sold for $15,114.65, the insurance company itself being the only bidder, when the judgment in favor of the complainant was for $18,121.62.

"The action of the chancellor seems to have been dictated by a sound discretion and was in accord with 'the ends of substantial justice' (Shannon's Code, sec. 5549 [Code 1932, sec. 9719]) looking only to the preservation of the property pending the litigation, for the benefit of the party entitled thereto." Troughber v. Akin, 109 Tenn., 451, 479, 73 S. W., 118.

In the case of Cone v. Paute, 12 Heisk., 506, the court said:

"With much better means of weighing the testimony of the affiants than we can have, the Chancellor's conclusion . . . is entitled to great weight; and as we cannot undertake to say that his discretion has been abused, we are constrained to refuse the application."

The affidavit to the bill and the affidavit to the petition are in accordance with section 789 of Gibson's Suits in Chancery.

And we can look to the bill, answer, pleadings, and the whole record to that date in determining whether the appointment of a receiver was necessary and proper. Yost v. Hudiburg, 2 Lea (70 Tenn.), 627.

"While growing crops are considered for some purposes as a part of the realty and may be covered by the lien of a mortgage, yet the mortgagor is the owner of all crops sown, grown and harvested before foreclosure, with full power to sell or mortgage the same. . . . This right of the mortgagor to the crops continues until foreclosure, entry for the purpose of foreclosure, or the appointment of a re-

ceiver, whereupon the right to the unsevered crops or other products of the land passes to the mortgagee as a part of the property liable to the satisfaction of his claims.'' 41 C. J., 624, sec. 601; Akin v Egner, 8 Tenn. App., 560.

''The crops growing on the land, as well as the land, are held as a security for the mortgage debt.'' 2 Wiltsie on Mortgage Foreclosure (4 Ed.), sec. 798.

''In Tennessee the mortgagee is said to hold the legal title and may recover possession of the land at once by action at law; but by express stipulation or by tacit consent the mortgagor retains possession of the mortgaged premises and exercises all the rights of owner over the premises. Henshaw v. Wells, 9 Humph., 581; Reeves v. John. 95 Tenn., 440, 32 S. W., 312; Lincoln Sav. Bank v. Ewing, 12 Lea. 601; Maney v. Killough, 7 Yerg., 444; 4 Kent's Com. (2 Ed.), p. 154; Brier Hill Collieries v. Gernt, 131 Tenn., 542, 175 S. W., 560.'' Lieberman, Loveman & Cohn v. Knight, 153 Tenn., 268, 283 S. W., 450, 453.

The mortgagee is entitled to immediate possession, unless it is otherwise provided in the deed. Lincoln Sav. Bank v. Ewing, 12 Lea, 598.

''While in theory the rule prevails in Tennessee that the mortgagee takes the legal title and is entitled to possession, in practice the doctrine is only applied when necessary to protect the mortgagee's security afforded by the estate.''· Lieberman, Loveman & Cohn v. Knight, supra.

''A mortgagor is considered the owner of all crops grown and harvested before foreclosure, with power to sell or mortgage them; but upon the mortgagee's entry for the purpose of foreclosure, or the appointment of a receiver, the right to standing crops or other products of the soil passes to the mortgagee as part of the property liable for satisfaction of his claims. Whenever the mortgagee has the right to enter, the mortgagor is subject to ejectment without notice and the mortgagor is not entitled to the growing crops.'' 2 Jones on Mortgages (8 Ed.), sec. 985; Langford v. Hudson, 146 Tenn., 309, 241 S. W., 393; Akin v. Egner, supra; Boillin-Harrison Co. v. Keeble, 14 Tenn. App., 347.

''It appears . . . that, even before default, a mortgagee may invoke the powers of a court of equity to collect rents and income of mortgaged property, to be applied on the debt secured, upon showing that the debtor is insolvent, that the mortgaged lands will fall short of paying the debt secured, and that the rents and ·profits will be required for the purpose, unless there is some provision in the mortgage or deed of trust to the contrary. Lingerfelt v. Gibson, 161 Tenn., 477, 32 S. W. (2d), 1047; Lincoln Sav. Bank v. Ewing, 80 Tenn. (12 Lea), 598; Bramley v. Tyree, 69 Tenn. (1 Lea), 531; Brier

Hill Collieries v. Gernt, 131 Tenn., 542, 553, 175 S. W. 560." Schmid v. Baum's Home of Flowers, Inc., 162 Tenn., 439, 457, 37 S. W. (2d), 105, 111, 75 A. L. R., 261.

Hence, we think that the part of the crops impounded was subject to the lien of the mortgage, and that the appointment of a receiver was proper.

2. Appellant's second assignment is that the chancellor erred in appointing a receiver under a stipulation in the trust deed providing for a receiver. The provision of the trust deed for the appointment of a receiver is as hereinabove set out.

"A stipulation in a mortgage that, on default in the payment of the debt and on the filing of a complaint for foreclosure, the court shall, if requested by the plaintiff, appoint a receiver to take possession of the mortgaged premises and to collect the rents and profits thereof, is inoperative. Where a court has no authority under the law to appoint a receiver, none can be conferred by the consent or contract of the parties." Baker v. Varney, 129 Cal., 564, 62 P., 100, 79 Am. St. Rep., 140.

But, "Where the mortgage contains a stipulation that the mortgagee shall be entitled to have a receiver appointed upon default and the commencement of foreclosure proceedings, the court will make such appointment, upon his request therefor, if not as a matter of course, still upon any showing of equitable grounds therefor, or if no good reason against the appointment is shown." 42 C. J., 124, sec. 1690.

"Mortgage covenant agreeing that, on foreclosure, mortgagee would be entitled to appointment of rent receiver as of right, is not conclusive, but is entitled to weight." Tucker v. Nabo Const. Corp., 108 N. J. Eq., 449, 155 A., 460.

"Where evidence was conflicting as to amount which property would bring at foreclosure sale, stipulation in mortgage that mortgagee would be entitled to rent receiver as of right should influence court in solving question in mortgagee's favor." Id.

"A stipulation in a mortgage that, in case foreclosure proceedings are instituted, a receiver may be appointed to take the rents, profits, and crops, and apply them on the debt, has been held not to enlarge, in any degree, the mortgagee's rights as to the appointment of a receiver, for the court will appoint a receiver, in a proper case, without any stipulation; and, in any other case, it will not appoint one, whatever the parties may have agreed. Furthermore a stipulation of that character certainly cannot affect the rights of others, or authorize a court of equity to appoint a receiver in a case where the court has no such authority given by law." 19 R. C. L., 562, sec. 370.

But where it is provided in the deed of trust that upon default the trustee or receiver shall take possession of the crops and dispose of

them for the purpose of the trust, as in this case, a different situation arises, and the lien of the trust attaches when possession is taken.

"The right to immediate possession and all subsequent accruing rents, as well as to the growing crops, passes to the trustee in a deed of trust providing that if the debts are not paid at the expiration of two years, the trustee shall take possession and sell, and also that he shall take immediate possession of all the personal property, including the growing crops, and dispose of the same for the purposes of the trust." Reed Fertilizer Co. v. Thomas, 97 Tenn., 478, 37 S. W., 220; Schoolfield v. Cogdell, 120 Tenn., 638, 639, 113 S. W., 375.

The chancellor's appointment of a receiver was not based alone on the authority conferred by the deed of trust, but also upon the facts shown by the record. Hence this assignment of error is overruled.

3 and 4. Hence it follows that granting of injunctions was proper to protect the complainant's interest, and it results that the assignments of errors in regard to costs, attorneys' fees, and fee of the receiver are overruled.

The demurrers were properly overruled. The deed of trust was filed and the debt shown. The allegations as to the value of the land could only be made on belief, as it was a matter of opinion, and could only be definitely ascertained when it was offered for sale. This allegation was verified when the land was sold for only $15,114.65. What a thing was sold for in the market is evidence of its value. 23 C. J., 57; Pepper v. Telegraph Co., 87 Tenn., 573, 11 S. W., 783, 4 L. R. A., 660, 10 Am. St. Rep., 699. The amount realized at a sheriff's sale under execution issued on a judgment upon one of the notes for goods covered by a bill of sale is conclusive on the parties as to the value of the property. Griesmere v. Thorn, 32 Pa. Super. Ct., 13. Defendant Crosswy evidently thought it would not bring the mortgage debt as he did not assume it, and strenuously denied that he had assumed it. He sold the farm to the Ellises, who are insolvent, took their unsecured note without lien on the land, let them mortgage it and give him a part of the proceeds of the loan. He then took a second mortgage, and later bought in the land on foreclosure of the second mortgage without assuming the assurance society's mortgage. The allegation of insolvency was given on information, and was later verified by a stipulation that the Ellises were insolvent. They made no defense to the bill and allowed pro confessos to be taken. Hence we think complainant assurance society made out a case in the bill for a receiver and is entitled to the proceeds of the crops as decreed by the chancellor.

All of the assignments of errors are overruled, and the decree of the chancellor is affirmed. A decree will be entered in this court for $1,868.41 in favor of the Equitable Life Assurance Society, for the proceeds of the crops as decreed by the chancellor. The costs in the

lower court will be adjudged as decreed by the chancellor; that is, one-half is adjudged against Crosswy and the surety on his appeal bond, and the other half is adjudged against the Equitable Life Assurance Society of the United States. The cost of the appeal is adjudged against Crosswy and the surety on his appeal bond. The cause is remanded to the chancery court of Robertson county for the payment of the funds in accordance with the decree of the chancellor.

Faw, P. J., and DeWitt, J., concur.