UNION JOINT STOCK LAND BANK OF LOUISVILLE v. KNOX COUNTY et al.—97 S. W. (2d), 842.

Eastern Section. March 28, 1936.

Petition for Certiorari denied by Supreme Court, October 17, 1936.

274

Frantz, McConnell & Seymour, of Knoxville, for appellant.

James G. Johnson and Kennerly & Key, all of Knoxville, for appellees.

PORTRUM, J. This is a suit by the bank to recover a deficiency judgment in the sum of $3,480.47, representing the sum the security failed to realize at a foreclosure sale upon an original obligation of $11,500. A short time after the foreclosure of the farm securing this obligation, the bank resold the property for the sum of $11,500, and this sum was sufficient to cover the bank's entire obligation, since the original sum had been reduced by payments upon the principal.

The complainant bank seeks in a court of equity a windfall in the amount of $3,500; the bank's legal right has been often recognized, and enforced, but in the instant case the bank has only a legal right, for there is not a shadow of equity favorable to it.

The bank seeks to require Knox County, perhaps the only solvent defendant, to pay in the sum of $1,900 as a credit upon this claim, and it bases this right upon the following facts:

The mortgage was executed in 1923 and covered a 600-acre farm in Knox County, and was payable in semi-annual installments on the amortization plan of about $400 each. In 1927 Knox County and the State Highway Department acquired a right of way for a new concrete road through a portion of this farm. The county instituted condemnation proceedings against tenants in common or owners of the farm, namely, Thomas N. Brice and others, but the county failed to make the trustee in the trust deed a party, or to bring the beneficiary or mortgagee, the bank, before the court by process or notice. This proceeding was allowed to remain in court without action until the latter part of 1930, and the county and the owners were about to get together upon the value of the right of way taken, when the husband of one of the tenants in common took action, namely, J. C. Day, who had signed the note secured by the mortgage in the capacity of a maker, but in fact he was an accommodation indorser signing along with his wife, Annie B. Day, and the four other Brice children. When Day learned that the county was about to pay over this sum of money directly to the tenants in common, he consulted an attorney to ascertain if he had signed the note and was liable thereon, and, if so, to request that the bank require the payment of the funds upon the obligation.

His attorney, on the 5th day of December, 1930, wrote the complainant bank asking if the name of J. C. Day appeared upon the note as a maker, and notifying the bank of the pending condemnation proceedings, and the prospective settlement, and requesting the bank to take steps to protect Day against a deficiency judgment by requiring the payment of this fund upon the obligation. The attorney suggested that the bank write the county judge and the county attorney in reference to the matter.

The bank replied to this letter, stating that, when application was made to it for release of the lien, it would require the payment of the sum upon the obligation.

The bank then wrote the Knox county attorney, Mr. James G. Johnson, in reference to the payment of this sum directly to the bank to be applied upon the bank's obligation. Mr. Johnson replied to this communication at length, stating that Knox County and the owners were about to settle the controversy, by the parties executing to the county a deed in consideration of the payment of $1,900. He stated that the bank had no interest in this, since the land had been taken for more than a year, and the statute of limitation had run against the bank. And he stated that the bank's security was far in excess of the amount of the obligation, and for this reason the bank should not interfere with the compromise of the controversy between the parties. Mr. Johnson went further and assured the bank that he would find a bidder who would buy in the property for the bank debt and requested the bank, if it

should become necessary to foreclose the lien, to notify him in order that he might find a bidder to protect the bank against any loss that might grow out of the adjustment of the right of way between the parties. This was the substance of the communication.

Mr. Day continued to write, and wrote four or five letters to the bank in regard to his liability, and to induce the bank to require the payment of the compromised sum upon the obligation. This correspondence was carried on from the 5th of December through January and up until February. In the latter part of January, 1931, Knox County and the Brice heirs agreed upon a price for the right of way, and the heirs made Knox County a deed for the strip of land taken, in consideration of $1,900 paid direct to them. After the execution and delivery of this deed, and in the early part of February, Knox County apepared in court and voluntarily dismissed the condemnation proceedings.

Mr. Day continued his persistence in insisting upon the bank requiring the payment of this fund upon the obligation, and in protection of him against a deficiency judgment. After the correspondence between Mr. Johnson, county attorney, and the bank, the bank then turned Mr. Day's correspondence over to its attorney, and on February 2, 1931, the bank's attorney wrote the following letter to Mr. Day:

"In connection with the above numbered loan, Mr. Gibson, President of The Union Joint Stock Land Bank, has handed me your letter of January 24 in regard to the highway taking part of the land covered by the above numbered loan for road purposes and asking that the bank take steps to have this fund paid on the loan. I wish to state that you are interested as much, if not more, in this matter as the Land Bank due to the fact that we have a note secured by a deed of trust plus personal security, and I would advise that as you are indirectly interested that you take this matter up with your attorney.

"For your further information will state that today the Land Bank received the amortization payment which was due February 1 on this loan, and so far as it is concerned, at present the loan is in good standing unless there are delinquent taxes of which it has no knowledge."

From this letter it appears that the bank had adopted the views given by Mr. Johnson, and the bank dismissed the defendant Day with the statement that he go and take care of himself, and that the loan was satisfactory to it. Now, it has changed its position and is calling on Day and the county to produce and pay over the $1,900 with interest.

It is upon this state of facts that the bank seeks a recovery against the county. The bank acquiesced in the position taken by Mr. Johnson, and delayed taking steps to require the payment

of this sum realized from its security upon its obligation. As one result of this delay, the county paid the funds over to the tenants in common, and they used $400 of this sum in making the payment of a semiannual installment, and, if the county must again respond and pay to the bank $1,900, then the bank will have received from the county $1,900 plus $400, or the sum of $2,300. The bank, by acting promptly, could have protected itself against loss and could have protected the indorser Day against loss, and the payment of the deficiency judgment in the sum claimed from the county. It could have intervened in the condemnation proceedings and had its rights adjudged, and have resisted and prevented the dismissal of the condemnation proceedings by the county. But it had another remedy; the trust deed provides that, in case the mortgagors sell any portion of the land without the consent of the mortgagee, then the mortgagee may at its option declare the loan in default, and take possession and foreclose immediately. Had the bank called the parties' attention to this provision, and the bank was familiar with the provision and perhaps no other one was, the parties would have paid over the funds to prevent a foreclosure.

And, since the mortgagee foreclosed this property with the intention of requiring the county to respond for the funds paid to the tenants in common, then it was the duty of the mortgagee to make demand upon the county prior to the foreclosure in order that the county might protect itself. The bank had acquiesced in the position taken by the county attorney from January, 1931, until the date of the foreclosure in June, 1932. The bank was under no contractual duty to notify Johnson of the foreclosure of the property, but it had no right to indefinitely delay the presentment of its claims against the county, and to wait until it became too late for the county to protect itself and the parties as the county had assured the bank it would do. The evidence in the record further reflects a view that the mortgagee foreclosed this property with a secret intention of bidding a sum for the property which would leave a deficiency in the debt and the county would then be made to respond. The president testified that he got Mr. Johnson's letter, but he paid no attention to the last part of it, with reference to Johnson finding a bidder for the property at the foreclosure proceeding. He did not forget that Mr. Johnson had paid for the county $1,900 and the bank was seeking this sum.

The court holds that the bank could have protected itself and the accommodation indorser by acting promptly in the protection of its security, and that the bank's delay or laches has injured the county as well as the indorser and that the loss of this fund to the bank is attributable directly to itself. It could not shift this responsibility to the indorser, because the indorser had a right to insist that the bank protect its security and ap-

ply it first to the payment of the debt before calling upon the indorser for any deficiency. Under these circumstances, the bank cannot release its security, then tell the indorser the bank is satisfied and for the indorser to get out and protect himself. The bank's suit against Knox County is dismissed with costs.

The claim against the mortgagors is probably an empty claim; the relief sought was against Knox County. We will deal briefly with the disposition of the remaining issue.

The chancellor held that the foreclosure sale was not free from unfairness which amounted to fraud. The court concludes that this finding of the chancellor is supported by the evidence. The president testified that it was the custom to make no effort to find bidders at a foreclosure sale, for it was much easier to close the trade privately after the bank had acquired the property. He testified that this practice was not only followed in this case, but that it was the customary practice. There was just one bid made here, and, because of this admitted custom, there was no other bid expected nor desired. It is the duty of the trustee to carry on a bona fide sale, and the court sees a reflection that the bid was made at an amount which would open the way to a suit against Knox County for the funds above referred to.

The court further held that $8,000, bid by the mortgagee, was an inadequate bid, and that the property was worth $20,000. The proof sustains these holdings, but it is attacked and, if the appellant is able to throw out this proof, then there will be no evidence to support the findings of the chancellor. First, it is insisted that the foreclosure sale is conclusive, and this would be true but for the fact that the sale was not carried out in good faith and in strict fairness, and, when a sale is adjudged fraudulent, it is no longer conclusive.

It is next said that $8,000 is not so grossly inadequate as to shock the conscience of the court, agreeing that the farm was worth $20,000, and, the sum not being grossly inadequate, the court will not disturb the transaction; that, in the absence of gross inadequacy, there is no presumption of fraud. This is true when the parties depend solely upon the inadequacy of the consideration as proof of fraud. Here there is other proof of fraud, and the inadequacy is but another badge and is admissible in corroboration of other facts.

Certain tax assessments were introduced to show value; perhaps before a jury these papers should have been excluded. The court in weighing testimony gives little value to the assessment role, knowing that they were not intended to reflect the market value.

The witnesses qualified as competent witnesses to fix values

of real estate; Mr. Johnson stated facts which indicated that he is an expert, and the other witness, whose testimony is excepted to, was a part owner and occupier of the land. The witnesses state sufficient facts to allow the court to admit their testimony, and they were then subject to cross-examination to test their knowledge of land values.

While subsequent sales of land in the community, or of the same land, when made at a time not too remote from the sale in question, are admissible as a reflection of the market value, so we think there was no error on the part of the chancellor in not excluding the evidence pertaining to value.

The fact that the complainant was guilty of unfairness in foreclosing the property in question and in buying it in at an inadequate price and thereafter selling it at a sum sufficient to cover any loss, with the purpose and intention of creating a profit at the expense of the defendant, justifies a court of equity in denying the complainant relief by way of a judgment upon the note for the deficiency. This is what the chancellor did and we see no error in it.

"The times are out of joint." The courts are looking with disfavor upon deficiency judgments when the party has been made whole, and seeks a windfall, especially when the foreclosure was made in these distressing times. The reason for the denial of equitable relief in such cases is stated in the following New York cases: Chemical Bank & Trust Co. v. Adams Schumann Associates, Incorporated, 150 Misc. 221, 268 N. Y. S., 674; Dry Dock Saving Institute v. Harriman Realty Corporation, 150 Misc., 860, 270 N. Y. S., 428; Monaghan v. May, 242 App. Div., 64, 273 N. Y. S., 475; Cooper v. Knight, 117 Fla., 32, 157 So., 27; Better Plan Building & Loan Association v. Holden, 114 N. J., 537, 169 A., 289.

This bank was created under an act of Congress passed to relieve the distressed debtor, and the purpose was to do a banking business of loaning and collecting principal and interest, and not to augment its profits by carrying on a real estate business in buying up its securities at the expense of its debtor and selling it at private sale for a profit. Under such circumstances the debtors have some equity, but in this case the bank has no equity, and it is only when the equities are equal that the courts of equity follow the law. The decree of the chancellor should be and is affirmed, with costs.

Ailor and McAmis, JJ., concur.