BROWN v. P'POOL.—166 S. W. (2d), 633.

Middle Section. July 11, 1942.

Petition for Certiorari denied by Supreme Court, December 5, 1942.

630

Maddin, Bailey & Maddin, of Nashville, for appellant.
Charles C. Trabue, Jr., of Nashville, for appellee.

FELTS, J.  This is a suit for a deficiency decree.  Complainant, F. D. Brown, conveyed to defendant, Dr. Bruce P'Pool, a block of business property, consisting of a hotel (and the furnishings in it) and other buildings, in Fort Lauderdale, Florida for $70,000, $10,000 cash and $60,000 represented by eleven notes executed by Dr. P'Pool and wife, Stella Mai P'Pool. They also gave complainant a mortgage on the property to secure the notes. The date of the notes and mortgage was April 3, 1937. One of the notes was for $10,000, and matured April 1, 1938; and all of the others were for $5,000 each and matured one every six months thereafter.  The mortgage stipulated that if default in payment of any of the notes continued for more than 60 days the mortgagee could declare all the rest of them due, foreclose the mortgage, and sue on the debt.

The parties made another agreement February 15, 1938, reaffirming the transaction and rearranging the maturities so as to make the $60,000 payable in seven annual installments, the first for $5,000 due April 1, 1938, the second for $5,000 due April 1, 1939, and the others for $10,000 each and maturing one each year thereafter.  It was stipulated that if the mortgagors failed to pay any installment at maturity, the agreement should become void, and the mortgagee could declare all of the remaining notes due, sue thereon, and foreclose the mortgage.

The mortgagors failed to pay the first installment, and as soon as the 60 days were up the mortgagee declared all the notes due and filed a bill in chancery to foreclose the mortgage. Dr. and Mrs. P'Pool were residents of Nashville, Tennessee, and were not personally served with process in that suit.  But Dr. P'Pool was notified when the suit was brought; and he had an attorney in Florida who watched the progress of the suit. On June 6, 1938, two affidavits were filed in the suit, one by V. G. Hodges that the fair cash market value of the mortgaged property was not in excess of $47,000, and the other by A. J. Barnes that such value was not in excess of $50,000.  Pursuant to a foreclosure decree, the property was advertised and sold at public auction September 5, 1938, for $50,000, complainant being the purchaser. Dr. P'Pool's attorney advised him of this sale by letter which reached him in Nashville two or three days later.  The sale was later duly confirmed by the court.

After crediting the net proceeds of the sale on the notes, the balance due thereon was $14,281.56. On October 1, 1938, complainant

brought the present suit against Dr. and Mrs. P'Pool for that amount, plus 5% interest from September 5, 1938, and a reasonable attorney's fee, as provided in the notes. Mrs. P'Pool demurred to the bill, and complainant dismissed as to her. The chancellor granted complainant a decree against Dr. P'Pool for the balance of $14,281.56, $1,928.01 interest, and $1,000 attorney's fee, totaling $17,209.57, and costs. From that decree Dr. P'Pool appealed.

Upon these facts, without more, Dr. P'Pool's liability on the notes for the deficiency or balance due on them would be unavoidable. It is true in some states the mortgagee's right to recover a deficiency is restricted by statute (Note 133 A. L. R., 1473), but there is no such statute in this state; and such a recovery is a matter of legal right upon the contract of the parties. Nolen v. Woods, 80 Tenn. (12 Lea), 615; Atlantic Life Ins. Co. v. Carter, 165 Tenn., 628, 57 S. W. (2d), 449; Sloan v. Gates, 166 Tenn., 446, 62 S. W. (2d), 52; Erwin Nat. Bank v. Riddle, 18 Tenn. App., 561, 79 S. W. (2d), 1032. It is only where the mortgagee has been guilty of bad faith or fraud in connection with the foreclosure sale that such a recovery has been denied. Union Joint Stock Land Bank v. Knox County, 20 Tenn. App., 273, 97 S. W. (2d) 842.

But appellant insists that by the law of Florida, which controls this case, the grant or denial of a deficiency decree is a matter of the chancellor's discretion to be exercised according to the equities of the particular case; that in this case the equities are such that no decree ought to have been allowed; and that complainant should have been repelled for unclean hands. To support this insistence appellant read the depositions of himself, E. H. Tillotson and J. F. Charlton.

The substance of appellant's testimony was this. While he was in Florida for his health in March, 1937, a real estate agent, R. T. Hodges, showed him the property, said a former owner had refused a million dollars for it "several years ago," and represented that he (Hodges) could sell it for him by February, 1938, for $135,000. He bought the property from complainant for $70,000, paying $10,000 cash and making the notes and mortgage for $60,000. He said that before he bought the property Hodges told him complainant and Hodges were partners and "owned property together." He, however, did not say that Hodges stated that there was any such partnership in respect of the property here involved. He stated that Hodges made an agreement to keep the buildings in repair for 18 months, and that he breached this agreement. He employed Hodges as his rental agent to handle the property for a commission of 3%. Hodges, however, charged him 5%, but he nevertheless continued to keep Hodges in charge of the property as his agent up to the time of the foreclosure suit. While that suit was pending, he went to Florida and tried, through his agent, Hodges, to effect a compromise with complainant.

He got a mortgage loan company in Florida to agree to loan him $50,000 on the property, provided the appraisal and the income warranted such a loan; and through Hodges he offered to pay complainant $50,000 cash, interest, court costs, and attorney's fee, and to execute a second mortgage on the property for the balance of $10,000 to be paid at the rate of $1,000 annually. Complainant declined this offer; and by decree the property was sold at public auction and purchased by complainant for $50,000. Appellant's attorney advised him of the sale; but he took no steps to have the bidding reopened or to resist confirmation of the sale on the ground that the price was inadequate.

The witness Tillotson was a real estate broker and a member of the Fort Lauderdale Realty Board, which is a voluntary association of real estate agents. He said there were some 90 licensed real estate brokers in Fort Lauderdale and only 32 of them belonged to the Board. He also said that R. T. Hodges had been expelled from the Association for misrepresentative advertising, and that his reputation was very poor among real estate brokers.

The witness Charlton was a civil engineer and real estate broker employed by appellant to appraise the property in December, 1938. This witness made an appraisal as of September 5, 1938, which he exhibited, and in which he expressed the opinion that the fair market value of the property was $65,000. But in his cross-examination he stated that by "market value" he meant what the property could be sold for, not at a public or foreclosure sale but at a private sale, "if due diligence were exerted." He amplified this by saying that he thought he could have sold the property for $65,000 if he "had been given exclusive right to sell it and had advertised it and gotten up briefs on it." He also stated that property usually sold at a foreclosure sale for only 40% or 50% of what it could be sold for at a private sale.

By stipulation section 5747, Comp. Gen. Laws 1927, and section 5751 of Comp. Gen. Laws Perm. Supp. of Florida were read into the record and were as follows:

"5747. All mortgages shall be foreclosed in chancery."

"5751. In all suits for the foreclosure of mortgages heretofore or hereafter executed the entry of a deficiency decree for any portion of a deficiency, should one exist, shall be within the sound judicial discretion of the court, but the complainant shall also have the right to sue at common law to recover such deficiency: Provided, no suit at law to recover such deficiency shall be maintained against the original mortgagor or mortgagors in cases where the mortgage is for the purchase price of the property involved and where the original mortgagee becomes the purchaser thereof at foreclosure sale and also is granted a deficiency decree against the original mortgagor or mortgagors."

In addition to these sections of the Florida statutes, counsel have discussed a number of decisions of the Florida Supreme Court. But no proof was made in the court below that they correctly express the existing law of Florida applicable to the case before us. In the absence of such proof, we cannot undertake to decide or. apply such law of a foreign jurisdiction. Watkins v. Watkins, 160 Tenn., 1, 10, 22 S. W. (2d), 1, 3; Kustoff v. Stuyvesant Ins. Co., 160 Tenn., 208, 215, 22 S. W. (2d), 356, 358; De Soto Hardwood Flooring Co. v. Old Dominion Table & Cabinet Works, 163 Tenn., 532, 43 S. W. (2d), 1069. The meaning of the statutes above quoted seems to be that a mortgagee may elect either to sue for the deficiency in the foreclosure suit, or to bring a separate suit at common law for such deficiency; and that in the foreclosure suit the entry of a deficiency decree is within the sound judicial discretion of the court, while in a common law action a judgment for the deficiency is a matter of legal right. But complainant could not exercise such an election in the Florida foreclosure suit. Dr. P'Pool was not before the court either by personal service or by voluntary appearance, and there was no jurisdiction of his person which could enable the court to allow or to disallow any deficiency decree; and it is conceded by counsel for appellant that nothing done in the foreclosure suit now stands in the way of complainant's right to maintain the present suit.

As we understand, counsel's insistence is that since the present suit was brought in a court of equity it is controlled by the same considerations which would have controlled the Florida court in the exercise of its "sound judicial discretion" as to allowance of a deficiency decree in the foreclosure suit. Even so, in the absence of proof of the Florida law as to what are such considerations, we must presume that they are the general principles of equity applied by courts of equity to protect mortgagors against unfairness, fraud, sacrificial sales, and payment of more than the debt in full to the mortgagee. Cf. Union Joint Stock Land Bank v. Knox County, 20 Tenn. App., 273, 97 S. W. (2d), 842; Gelfert v. National City Bank, 313 U. S., 221, 61 S. Ct., 898, 85 L. Ed., 1299, 133 A. L. R., 1467. Nothing to the contrary appears in any of the Florida decisions called to our attention.

Upon the facts of this case we find no unfairness, fraud, inadequacy of price, and nothing which should move a court of equity either to set aside the sale or to relieve Dr. P'Pool of liability on the notes for the balance due or the deficiency. While the conduct of the real estate broker, R. T. Hodges, both in selling the property to Dr. P'Pool and in his subsequent dealings as the doctor's agent, is subjected to much criticism, we cannot see that this has any bearing on the case. Of course his subsequent dealings with Dr. P'Pool as the latter's agent could not affect the rights of complainant; and his extravagant representation that a former owner of the property had

refused a million dollars for it several years ago, and his predictions or expressions of opinion that he would be able to sell it for Dr. P'Pool by February 1938 for $135,000, were not matters against which a court of equity would grant relief. Bridges v. Robinson, 2 Tenn. Ch., 720, 724 (Chancellor Cooper); McElya v. Hill, 105 Tenn., 319, 59 S. W., 1025. Especially is this so, since it is not claimed that such representations misled Dr. P'Pool into buying the property for more than it was worth. Indeed, his principal insistence seems to be that it was worth all he contracted to pay for it. The only acts attributable to complainant were his rejection of Dr. P'Pool's compromise offer and his prosecution of the foreclosure suit to a decree of sale. But in these he was guilty of no wrongdoing. No principle of equity required him to give up his rights under the contract and accept less favorable terms of payment, or to forego the remedy afforded him by law for enforcing such rights.

It is not claimed that the property was not properly advertised, or that there was any illegality or irregularity about the foreclosure sale. Neither does it appear that there was any emergency or unusual condition affecting property values. Nor does it appear that the price at which the property sold was so inadequate as to call for relief in equity. As above stated, Dr. P'Pool made no effort to have the bidding reopened or to resist the confirmation of the sale upon the ground that the price was inadequate. The best evidence of the market value of property is the price which it brought at a sale fairly and properly conducted. Equitable Life Assur. Soc. v. Ellis, 16 Tenn. App., 551, 560, 65 S. W. (2d), 250, 255; Union Joint Stock Land Bank v. Knox County, 20 Tenn. App., 273, 278, 97 S. W. (2d), 842, 845; Penn Mut. Life Ins. Co. v. Moscovitz, 119 Fla., 708, 161 So. 80, 81; Hodges v. Lamar, 119 Fla., 566, 161 So., 81, 83; Annotation, 120 A. L. R., 1366. The testimony of the witness Charlton does not show that the price was inadequate. When he expressed the opinion that the market value was $65,000, he merely meant that he thought he could have sold it for that at a private sale after an intensive advertising campaign. He stated that property usually sold for much less at a foreclosure sale than at a private sale after such a selling campaign.

For these reasons we think there was no error in the chancellor's decree and it is affirmed. A decree in complainant's favor and against appellant, Dr. P'Pool, will be entered in this court for the amount of the decree below, together with interest and all the costs of the cause.

Howell, J., concurs.

Crownover, P. J., not participating.