SAWTELLE et al. v. ASTOR et al.—126 S. W. (2d) 367.

Western Section. June 27, 1938.

Petition for Certiorari Denied by Supreme Court, Dec. 17, 1938.

34

Andrew J. Donelson, of Memphis, for complainants.
Charles L. Glascock, of Memphis, for defendants.

SENTER, J. The original bill in this cause was filed by the complainants, B. N. Sawtelle and the Memphis Building & Loan Association, against the defendants Jennie M. Astor, W. B. Astor, Bertha LeBlanc, and Raymond C. LeBlanc.

The bill alleges ownership in certain property located in the City of Memphis, Tennessee, and also a strip of land referred to as an avenue 40 feet wide joining and abutting Lots A, B, and C. The Building & Loan Association seeks to recover a deficiency judgment after a foreclosure of a trust deed on property conveyed in trust to secure a loan originally made by the Building & Loan Association for the sum of $9,000, and also to have a certain deed executed by Jennie M. Astor and W. B. Astor to the defendants Bertha LeBlanc and Raymond C. LeBlanc set aside as a cloud upon the title of complainants.

The defendants filed an answer and also a cross bill. By their answer they denied the material allegations of the bill, and the Astors alleged that the 40 foot strip of land in which complainants claim an easement was not included in the trust deed; that the Astors had been in open, notorious, continuous, and adverse possession of said strip of land for more than twenty years; that they had erected improvements on said strip of property and were occupying the same as a home; and denied that complainants had any rights or interest in said property and denied that the deed executed by them to the LeBlancs was fraudulent in fact or in law, and denied that complainants were entitled to have said deed cancelled as a cloud upon the title of complainants. The defendants Astor also denied that they were indebted to the Building & Loan Association as alleged in the bill; and by way of cross bill alleged that the complainants had breached their contract with the defendants Astor in the matter of the $9,000 loan, and set forth certain damages alleged to have been sustained by said defendants by reason of the alleged breach of said contract for the loan of $9,000; and also alleged that the defendants were entitled to certain credits, and sought an accounting between cross complainants and the cross defendant, Building & Loan Association.

At the hearing of the cause the Chancellor sustained the original bill of the original complainants and denied all the relief sought by the cross complainants and dismissed the cross bill of cross complainants. From this decree the defendants to the original bill prayed an appeal to this court and have assigned numerous errors.

By the first group of assignments of error by appellants the question is presented that the original complainants did not come into court with clean hands, and that the court erred in granting any affirmative relief in a court of equity. By the second group of assignments of error it is charged that the court erred in holding that the Astors had not perfected title in themselves to the strip of land involved by adverse possession. By the third group of assignments the contention is made that the appellee Sawtelle was guilty of laches, and, hence, not entitled to the relief sought. By the fourth group of assignments it is urged that the court erred in holding that the Astors were estopped to claim that the property described is bounded on the south by an old avenue; and that they intended to convey the fee to the avenue subject to the easement in favor of Lot "C."

By other assignments of error it is contended that the Chancellor erred in refusing to grant an order of reference to the Master for the purpose of determining the exact amount due by the Astors by virtue of the execution of the trust deed, and in failing to set aside the foreclosure sale because of the failure of the Building & Loan Association to first demand the amount properly due and owing to the

Building & Loan Association by the Astors. Still other assignments challenge the finding and holding by the Chancellor that the 40 foot avenue was not occupied and held adversely by the Astors, but that such occupancy was by express permission. By another group of assignments of error the contention is made that the court erred in holding that the Astors were estopped to complain of the transaction had with the Building & Loan Association and especially with respect to the application of certain dues paid into the association by the Astors.

Other questions are made by the numerous assignments and groups of assignments, which we will refer to in the course of this opinion, insofar as it becomes material or important to refer to the same.

Since one of the primary questions involved in this suit and presented for determination by this court on this appeal deals with the rights of the parties in a parcel of land located in Memphis, Shelby County, Tennessee, referred to in the record as Lot 140 of the John Trigg Subdivision, and also the rights of the parties in the 40 foot strip referred to as an avenue which was laid off along the southern part of the property involved, and for the purpose of a more comprehensive understanding of the issues presented with respect to the rights of the parties in the property involved, we deem it expedient to give something of the history of this property in chronological form.

The record reflects that in 1891 a suit was instituted in the Chancery Court of Shelby County by one U. W. Miller, as next friend of Cassius and Rosa Morti, against William Astor, et al. The defendants were Mr. and Mrs. W. B. Astor, Mrs. Astor having been before her marriage Jennie Morti, and parties defendant to the original bill in the present suit. This was a partition suit to partition the property among the heirs at law of G. A. Morti, of which he died seized and possessed. Among the property to be partitioned was Lot 140 of the John Trigg subdivision into three lots, A. B, and C, and to set apart the south 40 feet of the said Lot 140 as an avenue.

There is a plat of this partition which was incorporated in the report of the commissioners in that cause, and this plat shows the dimensions of the respective lots, and also the forty-foot avenue. This plat is made an exhibit in the present suit. In that proceeding it appears that Lot ''A'' was set apart by the commissioners to Jennie M. Astor, Lot ''B'' to Cassius Morti, and Lot ''C'' to Rosa Morti. In 1892 W. B. Astor and wife, Jennie M. Astor, sought to obtain a loan upon the property which had thus been set aside to Mrs. Astor in the partition proceedings. They were unable to obtain the loan at that time, because the attorney representing the proposed lender did not consider the former partition proceedings valid for certain reasons. Whereupon W. B. Astor and wife, Jennie M. Astor, filed a

bill against Cassius Morti and Rosa Morti in the Chancery Court of Shelby County for the purpose of having the court decree a confirmation of the former partition decree which had been made in the suit by U. W. Miller, as next friend, against them.

In this second suit the commissioner's report in all essential respects conformed to the commissioner's report in the former proceedings of Miller, as next friend, etc., and the commissioners recommended the adoption of the former report which had been made in the previous suit and adopted the plat above referred to.

Some years subsequent to the last mentioned suit, Mrs. Astor brought Lot "B" from her brother, Cassius Morti. Thereafter Mr. and Mrs. Astor had plans drawn up for a subdivision of Lots "A" and "B," this plan being referred to as the "Astor Park Subdivision." In 1909 several lots were sold according to this subdivision, but for certain reasons the Astors later bought back all except one of these lots which had been sold. In appears that this plan of the Astor Park Subdivision was never recorded or otherwise dedicated.

In 1912 there was another suit filed in the Chancery Court of Shelby County by Jennie M. Astor and husband against G. W. Fisher, Mr. Fisher having become the owner by purchase of Lot "C" which was formerly owned by Rosa Morti. In this proceeding the Astors were claiming certain accretions to Lot "C." Mr. Fisher filed a cross bill in that cause, and in which he denied that the Astors had any interest in Lot "C" and also sought to open the 40 foot avenue which had been set apart by the commissioners in the previous suit above referred to. In that cause it appeared that Mr. and Mrs. Astor were living in a house on part of this forty foot avenue. The final decree in that cause sustained the contentions made by Mr. Fisher in his cross bill and awarded him a perpetual injunction enjoining the Astors from obstructing the forty foot avenue in any way and from any way interfering with Mr. Fisher's right to the use thereof. However, after the decree was entered in that cause, Mr. Fisher told the Astors that they need not get off the forty foot avenue at that time, because he had another way of ingress and egress to his property, but it was agreed at the time that when it became necessary or desirable for Fisher or his successor in title, that the Astors would move off.

In 1924 Fisher conveyed Lot "C" of Lot 140 of the John Trigg Subdivision to B. N. Sawtelle, one of the complainants in the present suit. Mr. Sawtelle was familiar with the decree in the former suit between the Astors and Fisher, and had personal knowledge that the decree had been rendered and entered and had personal knowledge that Fisher told the Astors that they need not move off the forty foot avenue at that time. After Sawtelle entered into

possession of the property, it appears by a preponderance of the evidence that it was understood between him and the Astors that whenever it became necessary for him to open up the forty foot avenue they would move. Mr. Astor never notified Mr. Sawtelle or anyone else that he was claiming this property as his own by adverse possession. In fact, he was not holding it by adverse possession, since the right of possession had been previously determined by a former decree of the court.

About September 7, 1927, Mr. and Mrs. Astor, two of the defendants herein applied to the Memphis Building & Loan Association for a loan of $9,000, and to secure the loan executed a trust deed on certain property described therein. Their purpose in obtaining this loan was to take up a mortgage indebtedness then on the property in the sum of $5,000, on Lots A and B of the John Trigg Subdivision, and also to pay delinquent taxes on the property amounting to about the sum of $1,000, and the balance of the proceeds of the loan to be used in building six houses on the property, these houses to cost about $1,000 each. As was the custom of the Building & Loan Association, the money was to be paid out as it was used, after taking up the mortgage debt and paying the delinquent taxes on the property. The trust deed securing this loan conveyed Lots A and B of Lot 140 of the John Trigg Subdivision, and described the property conveyed as being located in the City of Memphis, Shelby County, Tennessee, as follows:

"Lots 'A' and 'B' of the Morti Subdivision of Lot 140 of the John Trigg Tract: Beginning in the west line of Riverside Boulevard (formerly Livermore Avenue) 219 feet south of the north line of said lot 140 of the John Trigg Tract; thence south, 195 feet to the north line of an old avenue; thence westwardly with the north line of said old avenue, 596 feet to the east line of Lot 'C' of said Morti Subdivision; thence northwardly 410 feet, more or less, to the north line of said Lot 140 of said John Trigg Tract; thence eastwardly to a point 389 feet west of the west line of Riverside Boulevard; thence southwardly along the south line of the Frisco Railroad to the beginning, less the north five feet of Lot 12 of the Astor Subdivision sold to W. H. Smith by deed in Deed Book 516, page 375, fronting 25 feet on Moneta Avenue, and running south 100 feet between parallel lines, and being part of the same property conveyed to Jennie Astor by Chancery Court decree recorded in Book 218, page 423, and conveyed to Jennie Astor by warranty deed recorded in Book 259, page 464, of the Register's Office, Shelby County, Tennessee."

As above stated, the money was to be paid out by the Building & Loan Association as the work progressed on the buildings. After about $650 had been advanced toward the construction of the first

house of the six to be built, Mr. Astor informed the Building & Loan Association that he could not do any more building on the property because the City of Memphis would not issue him a permit to build the other houses. At that time there remained in the hands of the Building & Loan Association of said loan to the Astors and to the credit of the Astors about $1,600. According to the preponderance of the evidence Mr. Astor instructed the secretary of the Building & Loan Association to apply this balance remaining to the $9,000 loan, thereby reducing the principal sum of the loan from $9,000 to about $7,400. At the time this was done the Astors accepted from the Building & Loan Association a new pass book showing the application of the balance of this money in accordance with the previous instructions. We do not find from the record that any complaint was ever made by the Astors with respect to the method in which this money was handled and applied until the filing of their cross bill in the present suit, which was approximately nine years from the date of the application of this balance by the Building & Loan Association, which occurred in the early part of the year of 1929.

There is also involved in this suit the question of the account of the Astors with the Building & Loan Association, and for which a claim is made, and this is with respect to the application to interest and principal of their indebtedness of a certain part of the dues which the Astors had paid into the Association on their stock which was issued simultaneously with the application for the loan.

It appears from the evidence that this $1,600 balance was applied to the indebtedness upon the express instructions contained in a letter to the Building & Loan Association, dated June 5, 1933, written by both Mr. and Mrs. Astor. In 1936 the Astors were in arrears on their payments to the Building & Loan Association in the sum of $5,347.75, and there had also accrued delinquent taxes thereon in the sum of $1,204.09. Notice of the intention to foreclose the trust deed was given to the Astors, and at the time of the foreclosure sale, according to a preponderance of the evidence, the Astors owed to the Building & Loan Association on said loan, together with accrued interest, taxes, etc., the sum of $10,731.01. The foreclosure sale occurred on October 26, 1936, and at which sale the property was bid in by the Building & Loan Association for the sum of $6,000, leaving a deficiency owing to the Building & Loan Association of $4,731.01.

After the foreclosure of the trust deed and after the property had been bid in and a trustee's deed executed to the Building & Loan Association, Mr. Astor informed Mr. Campbell, the secretary of the Building & Loan Association, and the trustee named in the trust deed, that he claimed the south line of the property conveyed in

the trust deed was just north of the house in which he was living. If this claim so made by Mr. Astor to Mr. Campbell was true, the south line of the property conveyed would not have been bounded by the old avenue called for in the trust deed. Prior to that time the Building & Loan Association or any of its officers had never heard of the Astors making any adverse claim to the south part of the property conveyed to them by the terms of the trust deed.

It also appears that on November 2, 1936, which was about a week after the sale of October 26, 1936, there was placed to record in the Register's Office of Shelby County, Tennessee, a warranty deed dated June 5, 1934, from Jennie M. Astor and W. B. Astor to Bertha A. LeBlanc. Bertha A. LeBlanc, the grantee in this conveyance, is the daughter of Mr. and Mrs. Astor. The consideration recited in this conveyance was ''ten dollars and other valuable consideration.'' The property so conveyed is described as follows:

''Beginning 414 feet south from the northeast corner of Lot 140, John Trigg Subdivision; thence West to the Mississippi River at low water; thence south along the river at low water 95 feet; thence east to Riverside Boulevard; thence north 95 feet to the beginning.''

According to the contention of the Astors this deed included the south forty feet or forty feet of Lots A, B and C of Lot 140 of the John Trigg Subdivision and the forty foot avenue which it is alleged was dedicated corresponded with the calls of the property.

After these claims had been made known to the Building & Loan Association, the Association had two separate surveys made in order to determine the boundaries of the property conveyed by the terms of the trust deed and conveyed by the trustee in said trust deed to the Building & Loan Association. It appears that the purpose of the Building & Loan Association in having these surveys made was to definitely establish the first call in the deed of 195 feet along Riverside Boulevard, and then to locate the forty foot avenue. The first of these surveys was made by Mr. Ferguson, a capable civil engineer who had been engaged in that character of work for many years. According to the survey made by Mr. Ferguson it was revealed that the beginning point of the property conveyed by the deed of trust was at the intersection of the south line of the Frisco Railroad right-of-way with the west side of Riverside Boulevard. By this survey it was shown that the distance from the railroad right-of-way to the north line of the forty foot avenue was 195 feet. From this point the survey corresponded with the calls of the trust deed. It also appears from this survey that the property in Lot 140 of the John Trigg Subdivision north of the line of the forty foot avenue was included in the description in the trust deed, except a portion of Lot 12.

Following the Ferguson survey the Building & Loan Association

procured a Mr. McCleskey, a civil engineer who had been engaged in surveying property for about twenty-five years, to make a survey of the property. Mr. McCleskey measured the distance from the south line of the forty foot avenue, which had been theretofore located, to the intersection of the Frisco Railroad right-of-way and found that it was 235 feet. This, according to the record evidence, was the proper distance, since Mr. McCleskey measured from the original south line of lot 140 of the John Trigg Subdivision and it included the forty foot avenue as well as the 195 feet fronting on Riverside Boulevard.

It would thus appear that according to these two surveys, the intersection of the north line of Trigg Avenue with Riverside Boulevard was used as a beginning point. This intersection was used as the beginning point because it was the one definitely located street in the locality and the point from which all other known surveys of this tract had been commenced. According to these surveys and other evidence in the record, they checked in all respects with other surveys which had been made of the John Trigg Subdivision. It also appears that the survey made by Mr. Ferguson conforms with the original plat laid off by the commissioners in the former suit of U. W. Miller, as next friend, against William Astor, et al. It also appears that the beginning point of the property on Riverside Boulevard and the distance, according to this survey, is the same as the one furnished by Mr. Astor to the Building & Loan Association at the time the application for the loan was made.

We find by a preponderance of the evidence that the survey which was made at or about the time the loan was made by the Building & Loan Association was prepared at the instance of the Astors, altho there is a conflict in the evidence on this question. That survey appears to have been made by a Mr. Richardson, an engineer in the city of Memphis, who was not called to testify by the defendants, although available as a witness.

It also appears from the record that on February 17, 1937, the Building & Loan Association purchased from J. W. Smith and wife Lot 12 of the Astor Park Subdivision for the consideration $25. This was one of the lots which was sold in 1909 by the Astors after the Astor Park Subdivision plan had been made.

According to the preponderance of the evidence, for the past thirty years Lots A and B of Lot 140 of the John Trigg Subdivision have not been enclosed. It does appear that the only fence or other evidence of enclosure is located on the property south of the forty foot avenue, and this fence was not erected by the Astors. Nor is there any evidence in the record that the Astors, or their grantee, Mrs. LeBlanc, have ever made any entry upon or been in possession of any part of Lot C, of Lot 140 of the John Trigg Subdivision, or

that they have in any way enclosed any part of the forty foot avenue or the property north thereof forming a part of Lot 140 of the John Trigg Subdivision.

There is contained in the record a complete finding of facts and an opinion by the Chancellor. The learned Chancellor found that the complainant Sawtelle was the owner of Lot C of Lot 140 of the John Trigg Subdivision and the successor in title of G. W. Fisher to whom Lot C was decreed by the court in the former cause in the Chancery Court of Shelby County; that in that cause it was decreed that G. W. Fisher was entitled to an easement of way over the forty foot avenue here involved, and running along the south boundary of Lots A, B, and C from Riverside Boulevard to the Mississippi River.

The learned Chancellor further found that the occupance of the forty foot avenue by the Astors since the said former decree had been by the express permission of Fisher and also by Fisher's grantee, complainant Sawtelle. However, the Chancellor further found that the Astors were not in contempt of said former decree by reason of the agreement of the parties that the Astors could continue the use of the property until it was needed. The Chancellor further found that the Astors had not been in adverse possession of the forty foot avenue and that the only adverse claim was evidenced by the execution of the deed in 1934 to Mrs. LeBlanc; that the reason the avenue had been used by the Astors was because of their agreement with the owner of Lot C, that the former would be allowed to preserve their easement and that they both would use the road up to the Astor house.

On the question of the unexpended portion of the loan complained of by the Astors, complained of in their answer and cross bill, the Chancellor found and held that the cross complainants could not complain of that transaction because they had consented to the application of the unexpended balance to the loan and had accepted a new pass book from the Association, which gave them full notice of how the application of the funds had been made. The Chancellor further held that the Astors were now estopped from making any question with respect to the application of dues because of their letter written to the Association on June 5, 1933; that the Astors were not entitled to damages for the alleged breach of contract, nor to have the foreclosure sale set aside, and further held that the Building & Loan Association was entitled to a decree for the deficiency amounting to $4,731.01, with interest thereon from October 26, 1936. The Chancellor further held that the Building & Loan Association was the owner of Lots A and B; that since the property was described as running to and being bounded on the north by an old avenue the Astors were estopped to deny that the

property was bound by an old avenue, and that they can not derogate from their grant. The Chancellor further held that the right of way was expressly established in the partition proceedings brought by the Astors in 1892, and they were bound by the decree therein.

The Chancellor further found that the question of whether the dedication of the avenue was consummated by the acceptance by the public was doubtful, but since there was nothing to indicate acceptance other than the City of Memphis showing it on maps, the court was of the opinion that it had not been accepted by the public, and that it only constituted a private way as a burden on the fee and a benefit to the three lots out of which it was carved. The Chancellor further found that it was the intention of the Astors to convey to the Building & Loan Association the fee in the 40 foot avenue, subject to the easement in favor of Lot C; that the Astors did not own property contiguous to the avenue other than Lot 140; that it was contrary to sound reason and policy to say they intended to reserve the fee in this small strip; and therefore the Building & Loan Association was the owner of the fee to the avenue immediately south of Lots A and B, subject, however, to the private easement of way in behalf of Lot C.

The Chancellor further found that the surveyors for the Building & Loan Association correctly located the southeast corner of Lot 140; that the northeast corner of the lot was found by measuring the distance from the southeast corner north to the south line of the railroad track, 235 feet, where it intersects Riverside Boulevard, then 219 feet more gives the northeast corner of the original lot 140. In this situation the Chancellor further held that the Astors had nothing to convey to Mrs. LeBlanc; that the deed from the Astors to Mrs. LeBlanc constituted a cloud upon the title of complainants that should be removed; and that the defendants be perpetually enjoined from occupying the property and required to remove themselves and all of their effects from the said premises within ninety days from the date of the decree.

We deem it unnecessary to take up and discuss each of the numerous assignments of error, but we will consider what we conceive to be the material and determinative questions presented on this appeal.

Under the several propositions of law relied upon by appellants, the contention is first made that the defendants, the Astors, had held this particular avenue adversely for a sufficient time to perfect title. Numerous authorities are cited by appellants in support of the contention that under the facts as disclosed by the record a right of adverse possession to the property had been acquired. Lieberman v. Clark, 114 Tenn., 117, 85 S. W., 258, 69 L. R. A., 732; Creech v. Jones, 5 Sneed, 631, 632; Copeland v. Murphey, 2 Cold., 64. It being further contended that it is only land susceptible to en-

closure that must be enclosed in order to make it an element or factor in the scheme of adverse possession. In support of this contention the appellants cite and rely upon West v. Lanier, 9 Humph., 762; Davidson v. Phillips, 9 Yerg., 93; Scales v. Cockrill, 3 Head, 432, 433. Appellants further contend that even against a municipality land may be held adversely. City of Morristown v. Cain, Tenn. Ch. App., 44 S. W., 471; City of Memphis v. Looney, 68 Tenn. (9 Baxt.), 130; Elliott v. Williamson, 79 Tenn. (11 Lea), 38.

The first question to be considered by these propositions of law essentially requires a consideration of the record with respect to the alleged or claimed adverse holding of this property. We have heretofore referred to the decree in the former cause, in which it was decreed that Fisher was entitled to the property involved, to the extent of his property. The Chancellor found, and in which finding we fully concur, the holding of the property after that decree was purely permissive. According to a decided preponderance of the evidence, after the decree in the cause was pronounced, Fisher told these defendants that he would not interfere with their occupancy of the involved premises until it became necessary, since he then had another means of ingress and egress. These facts were fully known to Complainant Sawtelle, the grantee of Fisher. We think the former decree settled that question, and that any adverse holding by the Astors would have to begin from the date of the decree in the former cause, and continue adversely, notoriously, uninterruptedly, and continuously for a period of more than twenty years, since the defendants did not have record title to the involved property. The holding by these defendants since the said former decree has been purely permissive, and under which holding the defendants could acquire no title or interest as against Fisher or his successor in ownership. In this situation the authorities cited and relied upon find no application to the facts of the present case.

It is next contended by appellants under certain assignments of error that the property occupied by the Astors and conveyed by them to the LeBlancs was not covered by the description in the trust deed. This contention seems to be predicated upon the theory that the intention of the parties control. Authorities are cited to support the rule of intention as controlling. Pritchard v. Robori, 135 Tenn., 328, 186 S. W., 121; City of Nashville v. Lawrence, 153 Tenn., 606, 284 S. W., 882, 47 A. L. R. 1266.

It is next contended that the complainants are not entitled to any of the relief sought in a court of equity, because they do not come with clean hands, and further because of laches and acquiescence which will bar a right even to the extent of applying for an injunction. The authorities cited in support of this contention

we do not think find any application whatever under the facts as shown by a preponderance of the evidence. This contention seems to proceed upon the thought that the Building & Loan Association had breached its contract with the Astors in not furnishing the balance of the $9,000 to be used in the building of the other houses on the property as applied for and as granted. We concur in the conclusion reached by the Chancellor to the effect that the balance of the loan was not furnished by the Building & Loan Association upon Astor's advising the Building & Loan Association that the houses could not be built on the property because the Astors could not procure a permit from the City of Memphis. When this condition was found to exist it was mutually agreed between the parties that the unexpended balance of $1,600 was to be credited to the note, reducing the note by that amount. We think it clear from the record that the finding of the Chancellor on this subject is sustained by a decided preponderance of the evidence. Nor do we think that the facts as disclosed by the record, by a preponderance of the evidence, warrants the contention here made by the appellants to the effect that the demand involved as a stale demand and such that a court of equity will not enforce or grant injunctive relief. Numerous authorities are cited by appellants in support of the contention thus made, including Weidner v. Friedman, 126 Tenn., 677, 151 S. W., 56, 42 L. R. A. (N. S.), 1041; Madison v. Ducktown Sulphur Co., 113 Tenn., 331, 83 S. W., 658; Parker v. Bethel Hotel Company, 96 Tenn., 252, 34 S. W., 209, 31 L. R. A., 706; Stokes v. Lebanon & S. Turnpike Co., 25 Tenn. (6 Humph.), 241; Robertson v. Winchester, 85 Tenn., 171, 1 S. W., 781.

Insofar as the question of the application of the dues paid into the Association by the Astors is presented and involved in this suit, we do not find anything in the record to support the contention of appellants. To the contrary, we think it clear that this was in accord with the usual manner of handling such transactions by the Building & Loan Association and fully acquiesced in by the Astors. We do not find any foundation in fact to support the contention made by appellants that the Building & Loan Association breached its contract with the Astors by not applying the balance of the fund to the building of the houses on this property as originally contemplated by the Astors and the Building & Loan Association. This, according to a preponderance of the evidence, could not have been accomplished. The Astors failed to get a permit from the City of Memphis to build the other five houses, and so informed the Building & Loan Association, and it was then mutually agreed that the unexpended balance of the loan would be used and applied as a credit to the original $9,000 loan, reducing that loan by the amount of the credit. We find no facts to support any theory of a breach

of the contract on the part of the Building & Loan Association in this transaction. This transaction was clearly acquiesced in by the Astors.

We are further of the opinion that the Astors are bound by the description of the property contained in the trust deed, and are bound by its recitals, unless it presented a case for a reformation of the trust deed, but their cross bill does not seek to have the trust deed reformed. If it was properly plead, and the facts would warrant a conclusion that there was an error in the description of the property as the result of a mutual mistake, or a mistake upon the part of one party and fraud upon the part of the other, it would present this question, but we do not have that question before us. Nor was it made in the lower court, either by the pleadings or by the proof. The general rule is that where a grantor conveys land by a deed he is estopped to assert anything in derogation of the deed. Johnson v. Ford, 147 Tenn., 63, 245 S. W., 531. See also, Ferguson v. Prince, 136 Tenn., 543, 548, 190 S. W., 548, and cases therein cited.

We think it is also the law that where the owner of property gives a deed with a call for a street or alley or other way as adjoining the property conveyed, he is estopped to assert that such a right of way does not exist. In other words, he can not convey the property abutting the street or alley and afterwards deny to the grantee the right to use the street or alley. Brown v. Berry, 6 Cold., 98, 46 Tenn., 98; and numerous authorities from other jurisdictions, including Teasley v. Stanton, 136 Ala., 641, 33 So., 823, 96 Am. St. Rep., 88; Rogers v. Bollinger, 59 Ark., 12, 26 S. W., 12; Billings v. McKenzie, 87 Conn., 617, 89 A.. 344; Schreck v. Blun, 131 Ga., 489, 62 S. E., 705; Young v. Braman, 105 Me., 494, 75 A., 120; Driscoll v. Smith, 184 Mass., 221, 68 N. E., 210; and numerous other cases.

We think it is also settled that a deed which calls for a highway or street or an alley conveys to the grantee the grantor's interest in the highway or street unless there are words in the deed showing a clear intention of the parties to the contrary. City of Nashville v. Lawrence, 153 Tenn., 606, 284 S. W., 882, 47 A. L. R., 1266; Vanderbilt v. Williams, 152 Tenn., 664, 280 S. W., 689; Reeves v. Allen, 101 Tenn., 412, 47 S. W., 495; Spaine v. R. R., 1 Shan. Cas., 181.

We are also of the opinion that the beginning point in a description of real property in a deed occupies no higher position than the other calls in the deed. In other words, it is immaterial as to the beginning point in the description, if it is made to appear that beginning at a definite point in a subsequent survey, the property is definitely located. Ayers v. Watson, 137 U. S., 584, 11 S. Ct., 201, 34 L. Ed., 803; Thompson on Real Property, Vol. 4, p. 291, Sec. 3190.

We also think that it is immaterial whether there was a

demand made by the trustee or by the beneficiary of the trust deed for foreclosure under the trust deed. Unless there is some provision in the trust deed requiring notice to be given to the grantor in the trust deed, no notice is necessary. However this may be, there is evidence in the record that would warrant the conclusion that the Astors were notified in advance of the proposed foreclosure. Certainly they were not prejudiced by the sale. They do not claim that they had any bidder in mind to be present and bid on the property.

It is contended by the appellants that the property did not sell for anything like a fair price, and that the price at which it was sold and bought by the Building & Loan Association was so inadequate as to shock the conscience of a court of equity. We do not find this to be true. There is no proof in the record showing any fixed value of this particular property when sold for cash, as provided by the terms of the trust deed. The advertising and sale of the property was legal. The public was notified of the sale in the way and manner that the trust deed provided. The terms of the trust deed were fully complied with in the matter of advertising the sale. The property sold for the sum of $6,000 and was bid in by the Building & Loan Association at that price. We can not say that the price at which the property was sold was so inadequate as to warrant a court of equity in declaring the sale void, or voidable.

We have given full consideration to all the questions presented by the assignments of error on this appeal. We fully concur in the facts as found by the Chancellor in all essential respects. It results that we find no error, and the assignments of error are overruled and the degree of the Chancellor affirmed.

The cost of this appeal will be paid by appellants, the appeal having been in forma pauperis.

Anderson and Ketchum, JJ., concur.