BEN BLOCK JONES, d/b/a Block Realty Co., Appellant, v. GLADYS THOMAS, Appellee.—296 S. W. (2d) 646.

Western Section.    August 29, 1955.

Petition for Certiorari denied by Supreme Court December 9, 1955.

504

William A. Percy, W. C. Rodgers, Memphis, for appellant C. A. Tindall.

J. S. Edmondson, H. Jennings Goza, Jr., Memphis, for appellee Gladys Thomas.

CARNEY, J.   The defendants, Ben Block Jones and C. A. Tindall, appeal from a judgment rendered against them jointly in favor of the cross-complainant, Gladys Thomas, by the Chancery Court of Shelby County.   The suit arose out of the foreclosure of a deed of trust at which foreclosure sale the defendant C. A. Tindall, mortgagee, became the purchaser of the house and lot belonging to the cross-complainant, Gladys Thomas.

Gladys Thomas, cross-complainant, had purchased the house and lot from one Emma Alexander Jones who had executed a deed of trust on said house and lot of date May 1, 1949, securing an indebtedness of approximately $4,500 which was purchased by the defendant C. A. Tindall.   The indebtedness was payable in monthly payments of $35 each with a balloon note of $2,600 due and payable May 1, 1954.

Gladys Thomas had paid the monthly notes to defendant Tindall as they became due but was unable to pay the balloon note of $2,600 due May 1, 1954.

Gladys Thomas unsuccessfully sought to refinance this indebtedness first at the Future Savings and Loan Association of Memphis and later through the defendant Ben Block Jones who deals in real estate notes.

The principal cause of her failure to refinance the indebtedness was two suits in the Chancery Court of Shelby County by one John Thompson who was a judgment creditor and former husband of Emma Alexander Jones, the predecessor in title to Gladys Thomas. In suits in Chancery Court, Thompson sought to impress a lien on the property owned by Gladys Thomas. Neither of the suits were prosecuted to conclusion and the last one was dismissed prior to the date of foreclosure under the Tindall deed of trust.

After two unsuccessful efforts to refinance the loan, Gladys Thomas obtained promise of relief from one E. P. Nabors who agreed to make a loan sufficient to pay off Tindall.

Attorney Homer Stone acting on behalf of Nabors ascertained that $2,773.19 was necessary to pay defendant Tindall in full.

After the Title Companies refused to insure the title of the Gladys Thomas lot on account of the Thompson claim, Attorney Stone recommended a foreclosure under the Tindall trust; the house and lot to be bought in by Nabors for the use and benefit of Gladys Thomas.

After due advertisement and on June 10, 1954, the property was offered for sale by the Trustee under Tindall's deed of trust. Attorney Stone was authorized to bid up to $3,000, on behalf of Nabors for the use and benefit of Gladys Thomas. The following bids were offered:

C. A. Tindall _____$2,997.79
Homer Stone, Attorney _____$3,000.00
C. A. Tindall _____$3,100.00
Ben Block Jones _____$3,200.00
C. A. Tindall _____$3,300.00
Ben Block Jones _____$3,474.00
C. A. Tindall _____$3,475.00

The property was knocked off by the Trustee to Tindall for $3,475 and Trustee's deed accordingly executed and delivered to him.

■ Tindall went into immediate possession of the property and began making repairs thereon. The Chancellor found the property to be worth $5,000 as of the date of the foreclosure and we cannot say that the evidence preponderates against this value and accordingly the Chancellor's finding of fact on this value is affirmed. Code sec. 10622.

After payment of the indebtedness to Tindall, costs of foreclosure, etc. approximately $500 was left in the hands of the Trustee to be paid to Gladys Thomas. The defendant, Ben Block Jones, filed the original suit in this cause in the Chancery Court seeking to recover $449.50 for alleged services rendered and expenses incurred in the unsuccessful effort to help Gladys Thomas refinance her loan.

Gladys Thomas then filed her answer and cross-bill against Ben Block Jones and C. A. Tindall seeking to set the foreclosure aside on the grounds that she had been over-reached and deprived of the opportunity to refinance her indebtedness to Tindall by the joint acts of Ben Block Jones and Tindall in bidding more at the

Trustee's sale than the new money-lender, Nabors, was willing to bid on the property for her benefit.

After prompt notice of the cross-complainant's intention to file suit to set the foreclosure sale aside, defendant Tindall continued to repair the property and before the trial sold the same to a third person for approximately $7000 on a long-term sales contract.

The Chancellor found that the defendant Ben Block Jones and C. A. Tindall did conspire to deprive the cross-complainant, Gladys Thomas, of a substantial equity in her home and to prevent her from refinancing her indebtedness to Tindall through the aid of Nabors and rendered a judgment against both defendants for the amount of complainant's equity in the home as of the date of the foreclosure sale.

Both the defendant Ben Block Jones and the defendant C. A. Tindall assailed the action of the Court in finding a conspiracy between Tindall and Jones. The only evidence in the record of a conspiracy is the testimony that at the Trustee's sale, Ben Block Jones and Tindall were conferring with each other apart and out of hearing of the other persons at the sale. Also they bid against each other until Ben Block Jones bid an amount sufficient to leave in the Trustee's hands after paying Tindall and costs approximately $500 which he claimed Gladys Thomas owed him for services rendered.

There is no evidence of any participation of Ben Block Jones in the repairs of the house or the sale of the house. Therefore, we feel inclined to modify so much of the Chancellor's decree as finds a conspiracy between the parties. However, from our view of the evidence, we do not think the case should be reversed or that either of

the two defendants should be held not liable to the cross-complainant.

For the reasons hereinafter set out we find that each of said defendants breached his trust relationship toward the complainant by bidding at said sale and that they are severally liable to the complainant for all damages proximately resulting from such acts.

The defendant Tindall had collected $35 per month for several years from the cross-complainant Gladys Thomas. He knew that she, a middle-aged colored woman of limited educational advantages and very limited financial resources, could not possibly pay the balloon note owing to him, Tindall, on May 1, 1954, without borrowing the money from someone else. Tindall also knew that the cross-complainant, Gladys Thomas, was exercising every effort at her command to try to borrow this money.

The defendant Tindall knew that Attorney Stone was representing some money-lender, whether he knew his name was Nabors or not does not make any difference. The defendant Tindall knew that the foreclosure was recommended by Stone as a means for Gladys Thomas to save her home instead of losing it.

The defendant Tindall, up until the hour of the sale, never gave the cross-complainant, Gladys Thomas, nor the Attorney representing her and the new money-lender, Nabors, any indication that he expected to bid on the property. On the contrary, his action was such as to lead them to believe that he was interested only in collecting his money that was due and owing on the note.

Under these circumstances, we think it was inequitable and unconscionable for him to appear and bid

at the sale more than an amount sufficient to guarantee to him the full payment of his indebtedness, accrued interest and costs of the foreclosure.

In the case of Bill Jones Auto Co. v. H. E. Carr & Co., 4 Tenn. App. 443, the following statement is to be found:

"It has been held in Tennessee that a mortgagee, or creditor, or trustee in a deed of trust, may purchase at the trust sale, and his title will be good, but his relations to the mortgagor or debtor impose upon him the observance of fairness and good faith, and if he makes an improper use of the power which he has over the trustee and over the sale, and become the purchaser, he will, in equity, be entitled to retain the property only as security for his debt. See, Lyon v. Jones, 6 Humph. 533; Coffee v. Ruffin, 4 Cold. [487] 513; 7 Cyc. 114, 41 C. J., 979."

This rule is reaffirmed in Brown v. Eckhardt, 23 Tenn. App. 217, 235, 129 S. W. (2d) 1122.

We think Tindall was estopped to appear at the sale and bid on the property, an amount more than his debt, interest and costs of foreclosure.

See Gibson Suits in Chancery, Fourth Edition, 1937, sec. 67 "Estoppels and Their Effect."

See also the case of Union Joint Stock Land Bank of Louisville v. Knox County, 20 Tenn. App, 273, 97 S. W. (2d) 842. In that case the holder of the indebtedness secured by deed of trust on real estate, Joint Stock Land Bank, stood by and permitted Knox County to pay for a portion of said land directly to mortgagors without objection. The deed of trust was foreclosed and holder of the indebtedness purchased the land at less than the

amount of the indebtedness. The Joint Stock Land Bank sold the land for a price sufficient to pay the full amount of the indebtedness. The Joint Stock Land Bank then sought to collect a deficiency judgment against the mortgagees, Knox County, etc. Held: The holder of the note had been made whole on its indebtedness and the Court as a matter of equity refused to allow a deficiency judgment.

The Chancellor held that since the property had been repaired by Tindall after the sale and had been sold to a third person, it would be very difficult for the complainant to refinance Tindall's indebtedness and the actual repairs placed by him thereon and that under the circumstances it was more equitable and expedient to award the cross-complainant a judgment against Tindall for the value of her equity in said home as of the date of the sale, to wit the difference between the indebtedness to Tindall, costs of foreclosure, etc. and the $5,000 actual value of the home and lot. The Chancellor's action in such respect is hereby affirmed.

With reference to the appellant Ben Block Jones an additional statement of fact is necessary. On April 10, 1954, 'the cross-complainant, Gladys Thomas, after she failed to get her loan with the Future Savings and Loan Association, was referred to the defendant Ben Block Jones, an experienced loan broker. On this occasion Gladys Thomas executed a note payable to bearer in the amount of $5,000 repayable in monthly installments of $55.71 each and also executed a deed of trust on her house and lot. On this date Gladys Thomas signed an agency agreement with Ben Block Jones d/b/a Block Realty Company to sell the $5,000 bearer note secured by the deed of trust on her house and lot so as to net $3,000 out

of which she would pay the indebtedness to Tindall, $200 attorney's fees, and $142.50 abstract fee.

The defendant Ben Block Jones was unable to sell the $5,000 note so as to net $3,000 and the agency contract between them was canceled. However, Jones contended that Gladys Thomas owed him $250 for his services in attempting to sell the note, $50 attorney's fees and the $142 abstract bill which he had paid or guaranteed to pay the Savings and Loan Association.

Even though Ben Block Jones was unable to sell the $5000 bearer note yet he placed the deed of trust securing the $5,000 note on record. Obviously he did this to further complicate the legal title to the house and lot and make it more easy to collect the $442 which he claimed if and when Gladys Thomas should be successful in refinancing the indebtedness on her home.

Ben Block Jones attended the sale under the Tindall deed of trust and participated by making the two bids as above set out.

In our opinion the defendant Ben Block Jones knew the purposes for which the foreclosure was being held and that he knew that such foreclosure was a part of the program of his client, Gladys Thomas, to refinance and save her home. In our opinion the Chancellor correctly held that the real estate agent Jones occupied a position of trust toward his client who had retained him to assist her in refinancing the indebtedness on her home.

He first violated his trust by further encumbering the title to his client's property by placing on record the deed of trust securing a bearer note for $5,000 which Gladys Thomas did not actually owe. We think he again

violated his trust when he appeared at the trustee's sale and bid on the house and lot. Black v. Pettigrew, 38 Tenn. App. 1, 270 S. W. (2d) 196; McNeill v. Dobson-Bainbridge Realty Co., 184 Tenn. 99, 106, 195 S. W. (2d) 626.

We also agree with the Chancellor the fact that the written contract with the agency may have been terminated prior to the foreclosure did not operate to cancel the fiduciary relationship existing between the defendant Ben Block Jones and his client Gladys Thomas. Coffee v. Ruffin, 44 Tenn. 487, 515.

However, we do observe that at the time the defendant Ben Block Jones first placed a bid upon the property the defendant C. A. Tindall had already bid $3,000 and had already topped Attorney Stone's maximum authority of $3,000. We also notice that the defendant Tindall took immediate possession of the real estate and sold the same and the defendant Ben Block Jones at no time had any possession or control of said real estate. Therefore, we think that the defendant Tindall should be primarily liable to the complainant for the loss of her equity and the defendant Ben Block Jones secondarily liable.

All of the Assignments of Error of the appellant Ben Block Jones except No. 10 are overruled. Assignment of Error No. 10 is sustained and Ben Block Jones is adjudged to be secondarily liable to the cross-complainant, Gladys Thomas.

All of the Assignments of Error of appellant C. A. Tindall except Assignment of Error No. 2 relating to the collusion between Jones and Tindall are overruled.

It appears that $457.66, the net balance in the hands of the Trustee as proceeds of the foreclosure sale, was paid

into the hands of the Clerk and Master and ordered delivered to cross-complainant, Gladys Thomas, in partial satisfaction of her judgment against the defendants Ben Block Jones and C. A. Tindall. Pending this appeal it appears that the funds are still in the registry of the Court below.

A decree will be entered in this Court modifying the decree of the Chancellor so as to award a judgment against the defendant C. A. Tindall in the amount of $2,151.88 together with interest at six per cent per annum from the date of the decree below. Said judgment will be credited with the $457.66 if the same is paid to the complainant, Gladys Thomas, or if the defendant C. A. Tindall shall fully satisfy said judgment of $2,151.88 to the complainant said sum of $457.66 shall be paid over to the said Tindall.

We also hold that the defendant Ben Block Jones is secondarily liable to the complainant in the same amount and a conditional judgment will be awarded in favor of cross-complainant Gladys Thomas against the defendant Ben Block Jones for any portion of the judgment of $2,-151.88 and interest which the said cross-complainant, Gladys Thomas, might be unable legally to collect from the said Tindall. The action of the Chancellor dismissing the original bill of Ben Block Jones against the cross-complainant, Gladys Thomas, is affirmed.

Three-fourths of the costs of this appeal will be adjudged against the defendant C. A. Tindall and his surety and one-fourth against the defendant Ben Block Jones and his surety.

Avery, P. J. (W. S.), and Bejach, J., concur.