Thomas E. ALBIN, Trustee; Thomas E. Albin, Individually; and Edward Ballou, Individually, Plaintiffs-Appellants,

v.

UNION PLANTERS NATIONAL BANK; First National City Corporation; Citicorp Realty Consultants, Inc.; and Percy Galbreath & Sons, Inc., (The Galbreath Company), Defendants-Appellees,

and

UNION PLANTERS NATIONAL BANK OF MEMPHIS, Tennessee, Counter-Plaintiff-Appellee,

v.

Thomas E. ALBIN, Trustee; Thomas E. Albin, Individually; and Edward Ballou, Individually, Counter-Defendants-Appellants.

Court of Appeals of Tennessee, Western Section, at Jackson.

Aug. 16, 1983.

Application for Permission to Appeal Denied by Supreme Court Oct. 24, 1983.

Petition to Rehear Denied by Supreme Court Nov. 21, 1983.

Warner Hodges, III, Germantown, for plaintiffs-appellants.

James W. McDonnell, Jr. and J. Richard Buchignani, Memphis, for Union Planters Nat. Bank.

Crawford McDonald and W. Grady McDonald, Memphis, for First Nat. City Corp. and Citicorp Realty Consultants, Inc.

Henry L. Klein, Memphis, for Percy Galbreath & Sons, Inc.

NEARN, Presiding Judge W.S.

This suit commenced in March of 1975 and a final decree was entered in December 1982.

The suit was commenced by the plaintiffs who were the majority interest holders under a joint venture agreement to construct certain apartment units in Memphis, Shelby County. For the sake of brevity for the purposes of this opinion, the defendants will be described as financers of the project even though they all are actually not. The gravamen of the complaint was that through frauds and/or conspiracy, the defendants had breached an agreement to finance construction of the apartment project, were attempting by various means to hinder or delay plaintiff's completion of the project by not advancing funds and in other ways, so that plaintiffs would become in default under the terms of their agreements with the defendants in order to allow defendants to declare a forfeiture, foreclose on the property which secured the loan, resell same and thereby make profit out of the scheme.

In the original complaint, plaintiffs demanded a jury to try the factual issues.

After the complaint was filed, Union Planters National Bank conducted a foreclosure sale of the property after requests for injunction by plaintiffs were denied and filed a counter claim for the remainder of the plaintiffs' indebtedness after applying the proceeds of the sale. The bank bid in the property at the sale for less than the balance due on the note.

The technical record alone in this matter exceeds 250 pages. The transcript of the proceedings exceeds 20 volumes and the exhibits weigh several pounds.

We do not intend to here set forth in any detail all of the facts, pleadings, hearings had, or orders entered in the cause over the years. We will set forth enough to make our treatment of the issues now presented understandable. Those issues are:

I. The Chancellor erred in disallowing inquiry as to circumstances of and amounts received at post-foreclosure sale of same land by appellee Union Planters National Bank and in not finding inadaquacy [sic] of bid and bad faith at foreclosure.

II. The Chancellor erred in not impaneling a jury to try the issues of fact.

■ We will treat the second issue first. When this suit was commenced the late, learned and fondly remembered Charles A. Rond was Chancellor. He heard some of the preliminary proceedings. Subsequent to his death, the case fell to his successor, Chancellor George Lewis. Chancellor Lewis recused himself and Special Chancellor John Robertson conducted a portion of the proceedings. Then, the case was assigned to Chancellor D.J. Alissandratos, who determined the issues of the case and entered a final decree. In short, three Chancellors and seven years ago the plaintiffs brought forth this suit. The only mention of a jury trial found in the record is in the original and amended complaints filed in 1975. No where in the record is there any objection noted to any of the Chancellors acting without a jury. When a portion of the matter was sent to a Master for determination of certain facts no objection was noted. When the Chancellor made his decision without the aid of a jury, no objection was voiced. In view of the long time passed since demand and the change in Chancellors, we are of the opinion that if counsel for appellant really desired a jury trial, the lack of one should have been called to the attention of the Court and objected to at some time in the proceedings; at least before the matter reached the Appellate Court. We hold that plaintiff cannot complain on appeal for the first time of the lack of a jury. See *Potts v. Knox-Tenn Rental, Inc.*, (1971 E.S.) 62 Tenn.App. 99, 467 S.W.2d 796. The second issue is found without merit.

Plaintiffs' entire case was based on the alleged fact that the money lender had breached its contract with the plaintiffs to finance the project, causing delays and incompletion of the apartments. The complaint sought to have the lender live up to the agreement so that the project could be completed.

The validity of the allegations concerning a scheme whereby the lender could "gerrymander the property and improvements to the bank's ownership" and to "make a profit from its own failure and leave the plaintiffs to suffer the damage it caused" hinges and is entirely dependent upon the lender being in breach of the financing agreement as charged in the complaint.

■ Seventeen factual issues were submitted to the Master in order to determine whether the lender had lived up to the financing agreement and to determine the value of the property in its incompleted state at the time of the foreclosure. The Master was instructed not to consider post foreclosure evidence in determining the fair market value of the property on the date of foreclosure. The seventeen issues regarding a breach of the agreement were all found against the plaintiffs. The answers showed that the lender had lived up to its obligation under the agreement if not exceeded them. The Master also found that the value of the property on the day of the foreclosure was the amount bid by the lender. None of the findings were precipitously made. The record of the proof heard by the Master is voluminous. The Chancellor overruled all objections to the Master's report and concurred in those findings. There is no question raised on appeal that there is no evidence to support those findings. Such being the case those findings are binding on this Court. T.C.A. § 27–1–113 and *Ferrell v. Elrod*, (1971 M.S.) 63 Tenn.App. 129, 469 S.W.2d 678.

Since it is now unassailable that defendants lived up to the agreement and there was no breach of the financing agreement by the defendants, and all other allegations of the complaint being dependent upon the fact of the existence of a breach, the remainder of plaintiffs allegations must collapse and any difficulties or financial embarrassment suffered by the plaintiffs in attempting to construct the project must necessarily be of their own making. Therefore, the first issue assigned can only have application to the deficiency judgment based on the note secured by the property foreclosed awarded by the Chancellor of $1,014,708.16.

■ We believe it appropriate to point out that in 1980 when the matter was referred to the Master the Chancellor ordered "This Court will hold under advisement the issue of whether post-foreclosure evidence may be considered at the trial before the Chancellor ..." The record does not indicate that an attempt was made thereafter to have the Chancellor consider post foreclosure evidence nor does the record reveal any order by the Chancellor denying such offer. Be that as it may, the Chancellor did not err in refusing to allow the Master to delve into the facts of the private sale of the property by the bank made some time subsequent to the foreclosure sale. The Chancellor is free to submit to the Master for determination those facts that he wills and reserve unto himself those that he wills. See *Gibson's Suits in Chancery*, 6th Ed. § 252.

■ Also, since the defendants were not in breach of their contract and the rest of the complaint had thereby collapsed, the only possible issue remaining was whether the property brought a fair or reasonable price at the sale. The Master held it did and the Chancellor held it did. The later sale price received by the successful bidder at a foreclosure sale is only material when the foreclosure sale price is so low as to shock the conscience of the Court and becomes an indication of fraud or fraud is proven in the obtaining of the foreclosure. See *Jones v. Thomas*, (1955 W.S.) 41 Tenn. App. 503, 296 S.W.2d 646; *Brown v. P'Pool*, (1942 M.S.) 25 Tenn.App. 629, 166 S.W.2d 633; *Sawtelle v. Astor*, (1938 W.S.) 23 Tenn. App. 33, 126 S.W.2d 367; *Miller v. Fidelity-Bankers Trust Co.*, (1937) 21 Tenn.App. 289, 109 S.W.2d 421; *Union Joint Stock Land Bank v. Knox County*, (1936 E.S.) 20 Tenn. App. 273, 97 S.W.2d 842. In this case the price received at the sale was the fair market price and no fraud was present in the obtaining of the foreclosure.

The first issue is found without merit.

After this appeal was argued all original defendants and Union Planters as counter-plaintiff entered into an agreement with Thomas Albin individually and as trustee whereby all matters between them were compromised and settled. Therefore, a dismissal of Albin's appeal was filed pursuant to Rule 15(b), T.R.A.P., on August 5, 1983, but which dismissal did not dismiss the appeal of Ballou and expressly reserved same. In that dismissal Albin agreed to pay one-half of costs accrued to date.

Therefore, the appeal of Albin individually and as trustee stands dismissed with one-half of costs below and on appeal adjudged against Albin individually and as trustee. As to appellant Ballou, the judgment below is affirmed with one-half of costs below and on appeal adjudged against Edward Ballou.

Done at Jackson in the two hundred and eighth year of our Independence and in the one hundred and eighty-eighth year of our Statehood.

TOMLIN and CRAWFORD, JJ., concur.